# Exhibit A

ELECTRONICALLY FILED
7/25/2023 4:50 PM
05-CV-2023-900897.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>05<br><br>Date of Filing:<br>07/25/2023 | Judge Code: |
|---|---|---|---|

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA**

**B&D MARITIME, INC. v. MARKEL AMERICAN INSURANCE COMPANY**

**First Plaintiff:** ☑ Business  ☐ Individual      **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other                              ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA  - Wrongful Death
- ☐ TONG  - Negligence: General
- ☐ TOMV  - Negligence: Motor Vehicle
- ☐ TOWA  - Wantonness
- ☐ TOPL  - Product Liability/AEMLD
- ☐ TOMM  - Malpractice-Medical
- ☐ TOLM  - Malpractice-Legal
- ☐ TOOM  - Malpractice-Other
- ☐ TBFM  - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX  - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE  - Personal Property
- ☐ TORE  - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN  - Abandoned Automobile
- ☐ ACCT  - Account & Nonmortgage
- ☐ APAA  - Administrative Agency Appeal
- ☐ ADPA  - Administrative Procedure Act
- ☐ ANPS  - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX  - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT  - Civil Rights
- ☐ COND  - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP  - Contempt of Court
- ☑ CONT  - Contract/Ejectment/Writ of Seizure
- ☐ TOCN  - Conversion
- ☐ EQND  - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD  - Eviction Appeal/Unlawful Detainer
- ☐ FORJ  - Foreign Judgment
- ☐ FORF  - Fruits of Crime Forfeiture
- ☐ MSHC  - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB  - Protection From Abuse
- ☐ EPFA  - Elder Protection From Abuse
- ☐ QTLB  - Quiet Title Land Bank
- ☐ FELA  - Railroad/Seaman (FELA)
- ☐ RPRO  - Real Property
- ☑ WTEG  - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP  - Workers' Compensation
- ☑ CVXX  - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING          A ☐ APPEAL FROM<br>DISTRICT COURT          O ☐ OTHER

R ☐ REMANDED          T ☐ TRANSFERRED FROM<br>OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO     **Note:** Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**     ☑ MONETARY AWARD REQUESTED  ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

STO064                    7/25/2023 4:50:10 PM                 /s/ NORMAN MATT STOCKMAN
                          Date                                 Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**     ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**     ☐ YES ☐ NO

ELECTRONICALLY FILED
7/25/2023 4:50 PM
05-CV-2023-900897.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

B&D MARITIME, INC.,    *
           *
   **Plaintiff,**    *   **CASE NO.**
           *
**v.**           *   _____
           *
**MARKEL AMERICAN INSURANCE** *
**COMPANY,**      *
           *
   **Defendant.**    *

## COMPLAINT

Plaintiff B&D Maritime, Inc. brings this complaint against Defendant Markel American Insurance Company ("Markel"), and states as follows:

### Parties

1.   Plaintiff B&D Maritime is an Alabama corporation with its principal place of business in Baldwin County, Orange Beach, Alabama.

2.   Defendant Markel American Insurance Company ("Markel") is a Virginia corporation with its principal place of business in Glen Allen, Virginia. Markel is registered to and does business in Alabama, including Baldwin County.

### Venue and Jurisdiction

3.   Venue is proper in Baldwin County under Ala. Code § 6-3-7.

4.   The Court has jurisdiction under Ala. Code § 12-11-30 and the Alabama Declaratory Judgment Act, Alabama Code § 6-6-220 *et seq.*

## **Facts**

5.     B&D Maritime owns and operates a marina in Orange Beach, Alabama.

6.     On June 1, 2015, B&D Maritime's predecessor in interest entered into a Marina Lease Agreement ("Lease Agreement") with Wallace Boat Rentals, LLC concerning the lease of one boat slip, one storage unit, and use of the marina water basin.[1]

7.     On November 3, 2015, B&D Maritime's predecessor in interest assigned its rights under the Lease Agreement to B&D Maritime via an Assignment Agreement.[2]

8.     The Lease Agreement states that Wallace Boat Rentals will maintain general liability insurance covering B&D Maritime as an additional insured.

9.     In the first half of 2022, Wallace Boat Rentals' customer, Kerrie A. Coe filed an action in the Circuit Court of Baldwin County entitled *Kerrie A. Coe v. Sanroc, LLC d/b/a Sanroc Cay Marina, LLC, et al.*, Civil Action Number 05-cv-2021-901257 alleging claims of negligence and wantonness against B&D Maritime and Wallace Boat Rentals (the "Lawsuit").[3]

10.     The Lawsuit arises from an alleged fall that occurred on June 2, 2021, while Coe was walking to a vessel that she and her husband had rented from Wallace Boat Rentals.

11.     Coe alleged that B&D Maritime and Wallace Boat Rentals were liable for her fall, based on an alleged failure to ensure the leased portion of the marina was safe for its customers.

12.     On June 2, 2021, the Lease Agreement was in effect between Wallace Boat Rentals and B&D Maritime.

---

[1] The Lease Agreement is attached hereto as Exhibit A.

[2] The Assignment Agreement is attached hereto as Exhibit B.

[3] A copy of the Complaint is attached as Exhibit C.

2

13.     On June 2, 2021, Wallace Boat Rentals was insured under a "Markel Tradesman Policy" issued by Markel, bearing policy number MTD00000418383 (the "Policy")[4].  The Policy provides, in part, as follows:

### *WATERCRAFT LIABILITY*

Coverage

> We will cover damages for **bodily injury** or **property damage** for which an insured becomes legally liable through ownership, maintenance, or use of the **insured vessel** arising from **declared usage.**
>
> A yacht club, marina or similar facility is an additional insured for **property damage** and **bodily injury**, for liability arising from the ownership, use and operation of the **insured vessel**, by an **insured.**  A yacht club, marina, or similar facility will not be provided a separate defense.

14.     On August 30, 2022, B&D Maritime requested, through written correspondence, defense and indemnity under the Policy in relation to Coe's claims.

15.     On December 12, 2022, Markel issued a "Coverage Position Letter" in which it agreed to defend B&D Maritime in relation to Coe's claims as an additional insured under the Policy, although it would not provide a separate defense.

16.     On March 9, 2023, Markel issued a second "Coverage Position Letter" stating that it would no longer offer B&D Maritime any defense in relation to Coe's claims as an additional insured under the Policy.

17.     The reason Markel gave in its March 9, 2023 Coverage Position Letter for revoking its prior coverage position and agreement to defend B&D Maritime was that:

> The Policy states a marina is an "additional insured for property damage and bodily injury, for liability arising from the ownership, use and operation of the

---

[4]  A redacted copy of what B&D Maritime understands to be the Policy is attached hereto as Exhibit D.

insured vessel, by an insured." The allegations in the Second Amended Complaint focus on B&D Maritime and/or Thomas' failure to repair, rebuild and/or construct the marina in compliance with regulation, code, and law. Further, the Second Amended Complaint states the cause of Coe's fall was a step which was not properly marked, not the appropriate height/length, and lacked proper and necessary safety railings, among other safety hazards and violations. Additionally, Coe testified she fell from the upper to lower part of the marina. A marina such as B&D Maritime is only an additional insured under the Policy for liability arising from the ownership, use and operation of the insured vessel by an Insured, i.e., Wallace. While it is confirmed Coe rented an insured vessel from Wallace, there are no allegations of, or a determination of, liability for Coe's fall arising from ownership, use, and operation of that that insured vessel. Rather, the Second Amended Complaint and Coe's testimony focus on the construct of the marina as the cause of Coe's fall and resulting injury. As such, B&D Maritime is not an additional insured under the Policy. As B&D Maritime is not an additional insured, no defense, whether the same or separate, is due B&D Maritime under the Policy.

18.     Markel's coverage position is wrong. Coe's claims against B&D Maritime concern liability arising from the ownership, use and operation of an insured vessel, by an insured.

19.     Markel owes B&D Maritime defense and indemnity under the Policy in relation to Coe's claims.

20.     Any such defense provided by Markel must be separate from the defense Markel is providing Wallace Boat Rentals, because of the conflict of interest that would exist otherwise.

### Count I – Declaratory Judgment

21.     B&D Maritime adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

22.     An actual justiciable controversy has arisen between B&D Maritime and Markel, as evidenced by the claims asserted by Coe against B&D Maritime and the coverage dispute between B&D Maritime and Markel. Without limitation, these justiciable controversies include:

(a) whether Markel has a duty to defend B&D Maritime with respect to Coe's claims;

4

(b) whether B&D Maritime is entitled to a separate defense provided by Markel; and

(c) whether Markel owes indemnity to B&D Maritime with respect to Coe's claims.

23.     Under the Alabama Declaratory Judgment Act, Alabama Code § 6-6-220 *et seq.*, B&D Maritime is entitled to a declaration of its rights, status, and other legal relations under the Policy in relation to Coe's claims.

WHEREFORE, premises considered, B&D Maritime requests the entry of a judgment against Markel declaring that:

(a) Markel has a duty to defend B&D Maritime with respect to Coe's claims;

(b) B&D Maritime is entitled to a separate defense provided by Markel;

(c) Markel owes indemnity to B&D Maritime with respect to Coe's claims; and

B&D Maritime should also be awarded such other general and special relief as this Court deems appropriate.  B&D Maritime also requests that pursuant to Ala. R. Civ. P. 57, the Court order a speedy hearing in this matter and advance it on the calendar.

## Count II – Breach of Contract—Defense and Indemnity

24.     B&D Maritime adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

25.     Markel's denial of coverage and refusal to provide defense and indemnity to B&D Maritime under the Policy in relation to Coe's claims is a breach of its insurance contract.

26.     Markel owes defense and indemnity to B&D Maritime for Coe's claims.

27.     B&D Maritime has been damaged by Markel's breach of its insurance contract.

WHEREFORE, premises considered, B&D Maritime demands judgment against Markel

for indemnity against Coe's claims, for damages, interest, and costs of court, and for such other,

further, and different relief to which it may be entitled.

/s/ Norman M. Stockman
NORMAN M. STOCKMAN          (STO064)
Attorney for Plaintiff B&D Maritime, Inc.

OF COUNSEL:

HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, Alabama 36601
Tel:     (251) 432-5511
Email: nstockman@handfirm.com

**Serve Defendant by Certified Mail as follows:**

Markel American Insurance Company
c/o Corporation Service Company, Inc., as Agent for Service
641 South Lawrence Street
Montgomery, AL  36104



AlaFile E-Notice

05-CV-2023-900897.00

To:  NORMAN MATT STOCKMAN
     nstockman@handfirm.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY
05-CV-2023-900897.00

The following complaint was FILED on 7/25/2023 4:50:15 PM

Notice Date:     7/25/2023 4:50:15 PM

BRENDA Q. GANEY
CIRCUIT COURT CLERK
BALDWIN COUNTY, ALABAMA
312 COURTHOUSE SQUARE
SUITE 10
BAY MINETTE, AL, 36507

251-937-0280
brenda.ganey@alacourt.gov

USPS CERTIFIED MAIL

**9214 8901 7301 4105 2300 0583 68**

*312 COURTHOUSE SQUARE*
*SUITE 10*
*BAY MINETTE, AL, 36507*

**05-CV-2023-900897.00**

To:  MARKEL AMERICAN INSURANCE COMPANY
C/O CORPORATION SERVICE C
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

**IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA**

**B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY**
**05-CV-2023-900897.00**

The following complaint was FILED on 7/25/2023 4:50:15 PM

Notice Date:     7/25/2023 4:50:15 PM

**BRENDA Q. GANEY**
**CIRCUIT COURT CLERK**
BALDWIN COUNTY, ALABAMA
312 COURTHOUSE SQUARE
SUITE 10
BAY MINETTE, AL 36507

251-937-0280
brenda.ganey@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>05-CV-2023-900897.00 |
| --- | --- | --- |

**IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA**
**B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY**

**NOTICE TO:** MARKEL AMERICAN INSURANCE COMPANY, C/O CORPORATION SERVICE C 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), NORMAN MATT STOCKMAN                                                                                                        ,

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: P.O. BOX 123, MOBILE, AL 36601                                                                   .

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:**

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of B&D MARITIME, INC.
pursuant to the Alabama Rules of the Civil Procedure.                                                *[Name(s)]*

| 07/25/2023 | /s/ BRENDA Q. GANEY | By: |
| --- | --- | --- |
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.          /s/ NORMAN MATT STOCKMAN
                                                                 *(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____ .
                                                                                                                    *(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
*(Name of Person Served)*                          *(Name of County)*

Alabama on _____ .
                              *(Date)*

_____          _____          _____
*(Type of Process Server)*                *(Server's Signature)*                    *(Address of Server)*

                                              _____          _____
                                              *(Server's Printed Name)*                *(Phone Number of Server)*

# EXHIBIT A

CIRCUIT COURT
BALDWIN COUNTY, AL
(FILED - BAY MINETTE)

JUL 2 6 2023

CIRCUIT CLERK

SanRoc Cay
27267 Perdido Beach Blvd.
Orange Beach, AL 36561
251-981-5423

Commercial  X
Personal  ___

**Marina Lease Agreement**

_Various_

Slip # _See attached page 1.5_ at $ ████ per Month
Storage Unit # _B-13 + B-14_ at $ ████ per Month _the two sheds currently occupying._
Electricity Metered per month

This Marina Lease Agreement (this "Lease") is made between SanRoc Cay Marina, L.L.C., an Alabama limited liability company (herein called "Marina"), and the undersigned Vessel Owner or Vessel Owner's Agent (herein called "Owner").

Marina hereby leases and lets to Owner for the vessel named in paragraph 1 of this Lease, and Owner hereby leases from Marina the slip number set forth above (the "Leased Slip") in the SanRoc Cay Marina and the storage unit, if any, set forth above (the "Leased Storage Unit"), subject to the terms and conditions as set forth herein.

1.   DESCRIPTION:   Owner represents and warrants the following to be true and correct:

| **Owner Information** | **Vessel Information** |
|---|---|

Name _Wallace Boat Rentals, LLC_ / _Michael Terrell_     Name of Boat _Various - See insurance form_
Address ████     Length ____ Beam ____ Draft ____ LOA ____
City ████     Manufacturer _____ Model ____
State ████ Zip ████     Year Mfg. ____ Color ____ Fuel Type ____
Home (___)    Work (251) 981-5757     Power or Sail _____ Holding Tank Yes / No
Cell ████ Fax (___) ____     Boat Ins. & # _____ Exp. Date ____
E-mail ████     Documentation/Hull ID _____
Emergency Contact ████     *Must provide copy of insurance policy to include*
Emergency Phone ████     $████ *Combine Single limit (CSL) with*

DLN# ████ State ████     *SanRoc Cay named as "additional insured"*
SS# ████ FEIN# ████     Car Tag Number _____ State ____
    Car Tag Number _____ State ____

**Credit / Debit Card Information**   Card Type ████
Account Number ████     Exp Date ████

**I hereby authorize SanRoc Cay to Charge my credit or Debit card with my monthly Marina Fees**

Print name _W. Michael Terrell_   Signature _W Michael Terrell_

**Slip Assignment Date** _Feb 2015_   **Expected Arrival Date** _In Possession_

Electric Reading _____   Customer Number _____

_6 yrs. 3 months._

2.   TERMS AND FEES:  This Lease is for a term of **75** months (the "Lease Term") beginning the 1st ____ day of
_June_ 20 _15_.  The dockage fee shall be $ ████ per month payable in advance with the first payment of $ ████ being due on _June 1, 2015_ and with further payments (if monthly) being due on the first of each month during the Lease Term and late after the tenth of each month during the Lease Term.  All other charges for goods or services at the Marina authorized by Owner or Owner's agent shall be additional amounts due under this Lease.  **This Lease will renew automatically unless Owner notifies the Marina in writing 30 days before the end of the Lease Term.** ~~With 30 days written notice to Owner, Marina may increase dockage fee or terminate this Lease.~~ _(PLL)_ _WMT_

Initials _WMT_
_PLL_

# MARINA LESE AGREEMENT
## PAGE 1.5



| * SLIP # | COST |
|---|---|
| A 01 | |
| A 02 | |
| A 03 | |
| A 04 | |
| A WALL | |
| B 17 | |
| B 18 | |
| B 19 | |
| TOTAL | |

* Slip assignments may be adjusted by owner to accomodate changes in condominium ownership. Any reassignment of slips will be along west pier. (PLL) WMT

3.     LIMITATION OF LIABILITY OF MARINA:   This Lease is for the use of Marina's water basin and to provide rental of a slip to berth the Vessel and a storage unit. The Leased Slip and the Leased Storage Unit shall be used at the sole risk of Owner as Marina shall not be liable for a loss of any kind to the Leased Slip, the Leased Storage Unit, the Vessel, or their contents, gear and equipment. Control of the Vessel shall remain Owner's responsibility at all times even if a key to the Vessel is left with the Marina. Inspection of docks and the berthed Vessel by Marina and any emergency aid to the Vessel shall be considered as an accommodation to Owner from which no duty arises. Marina has no responsibility to inspect mooring lines or to move Vessel from its respective slip and/ or hoist. Marina shall not have any liability for the interruption of utilities and/or the disconnection of the Vessel from the electrical power. Owner will require all contractors hired by Owner to accomplish work on Vessel to execute a "Contractors Agreement" with Marina and to comply with all insurance requirements contained therein prior to the commencement of any work and each individual employee of the contractor must sign a general release. Owner shall request and receive permission from Marina prior to commencing work on Vessel while on Marina premises or moored to Marina property. Marina does reserve the right to assign Owner any suitable space within Marina and to relocate the boat as may be necessary for whatever reason. Marina shall not be liable for any loss or damage caused by any act of God or by any criminal act. This is not a bailment contract, but is only a lease of marina slip and/or storage unit.

4.     LIEN OF MARINA: LATE FEES:   Marina shall have a lien against the Vessel, her appurtenances and contents for any unpaid sums due for use of dock facilities, storage or other services or other amounts due Marina, or for damage caused or contributed to or by the Vessel or Owner to any property of Marina or that of any other person at Marina. In the event the fees or other Marina charges are not paid within ten (10) days after the due date, a late fee of $20.00 will be charged. All balances over 30 days past due shall accrue interest at the rate of 18% per annum from the due date until paid in full. Boats will not be allowed to leave the Marina until all past due accounts for rent, work orders, fuel, storage fees, late fees, interest or other amounts due Marina are paid in full.

5.     DEFAULT:   Should Owner fail to pay any sums due Marina hereunder or otherwise, or violate any term or condition of this Lease or any Marina rules or regulations, or should Owner, Vessel, or Owner's leasehold interest pursuant to this Lease become the subject of a bankruptcy, receivership, seizure or repossession proceeding, Marina shall have the right, at its option, (1) to cancel and terminate this Lease and dispossess Owner of the Leased Slip and the Leased Storage Unit, including, but not limited to, removal of the Vessel from the Leased Slip at Owner's risk and expense: (2) to declare all amounts due under this Lease or otherwise for the remainder of the Lease Term to be immediately due and payable: (3) to take possession of the Vessel and appurtenances, if any, to hold the same as security for said payment plus any expenses which may reasonably be incurred by Marina in connection with the exercise of said right, including reasonable attorney's fees and expenses, and, if such default continues for a period of sixty (60) days, Marina may, at its option, sell the Vessel and appurtenances, if any, together with the contents of the same at public sale on the Marina premises, after giving notice in writing posted  at least thirty (30) days prior to such proposed sale giving notice of the time and place of such sale and notice to Owner at Owner's address as shown in this lease. Marina is expressly authorized by the Owner to make such sale upon such default and the giving of notice as provided herein and the purchaser at such sale shall be entitled to the Vessel, appurtenances, and contents. If the Vessel is sold as provided herein, the proceeds of such sale shall be applied first to the payment of all amounts accruing through the date of such sale and all costs incident thereto, including reasonable attorneys' fees and expenses, and the excess, if any shall be paid over to Owner on Owner's written demand. In the event of a deficiency of sale, and the proceeds will not pay such accrued amounts and costs, Owner shall continue to be liable to Marina for such Deficiency. Marina's remedies hereunder are cumulative and the election of any remedy shall not exclude any other remedy.

6.     INDEMINIFACTION AND RELEASE:   Owner shall indemnify, hold harmless and defend Marina,
Its employees, managers, members, agents, servants, representatives and affiliated entities from and against any and all injuries, losses, claims, lawsuits, actions, damages, liabilities and expenses (including, but not limited to, attorneys' fees and expenses) to persons or property arising from, related to or in connection with (a) the use, misuse or occupancy of, or ingress to or egress from, the Vessel, the Leased Slip, the Leased Storage Unit or Marina's common facilities by Owner or Owner's agents, contractors, licensees or invitees; (b) any loss or damage to the Vessel or the contents of the Vessel or the Leased Storage Unit; (c) any default  in the performance of any obligation of Owner under this Lease, including, but not limited to, any rules and regulations of Marina promulgated from time to time by Marina; (d) any act or omission of Owner or Owner's agents, contractors, licensees or invitees; (e) enforcing this indemnity. Marina shall not be liable or responsible for, and Owner hereby releases Marina from, all liability or responsibility to Owner or any person claiming by, through or under Owner, by way of subrogation or otherwise, for any loss or damage to any property or injury to or death of any person, except if such loss, damage, injury or death is a direct result of Marina's sole negligence.

Initials _WMI_

7.   SUBLEASING:   Owner shall not transfer, assign or sublease any interest in this lease, the Leased Slip, or the Leased Storage Unit referred to without the prior written consent of the Marina, which such consent may be withheld at the sole discretion or Marina for any reason. Any Purported transfer, assignment or subleasing of this Lease, the Leased Slip or the Leased Storage Unit without the prior written consent of Marina shall be default under this Lease.

8.   ACCEPTANCE OF VESSELS BY MARINA:   Only acceptable vessels in good condition shall be admitted to the Marina. Marina will, at the sole discretion of the Marina's Harbormaster, or his designated agent, accept only those vessels that are in safe, maintained and workable condition and meet such standards as set forth by Marina. The above, notwithstanding all maintenance of boats, is the responsibility of Owner. In the event it is necessary to move a boat at hours other than normal hours of operation, arrangements must be made with Marina within a reasonable time prior to each move, and an extra charge may be made for such services.

9.   STORAGE UNITS:   As available, Marina will provide a storage unit to Owner for the additional monthly fee set forth above. No storage boxes are allowed except as approved by Marina in writing. Termination of slip lease also terminates storage unit lease.

10.   STORMS-HIGH WINDS: If  Marina, in its sole and absolute discretion, determines that any weather or other condition, including, but not limited to, storm, high wind or hurricane, makes it desirable to remove the Vessel from the Leased Slip, or change its mooring, Owner agrees to remove the Vessel from the Leased Slip or change its mooring, and, if Owner does not remove the Vessel from the Leased Slip, Marina, in its sole and absolute discretion, may, but is not obligated to, remove the Vessel from the Leased Slip at the sole risk and expense of the Owner. Owner hereby releases Marina from all liability or responsibility to Owner or any other person claiming by, through or under Owner, by way of subrogation or otherwise, and agrees to indemnify, hold harmless and defend Marina, for any loss or damage to any property or injury to or death of any person, irrespective of the cause of such loss or damage, arising from related to or in connection with any removal of, or change in the mooring of, the Vessel or any other vessel.

11.   INSURANCE:   Owner will keep in force at its expense as long as the Lease remains in effect and during such other time as the Vessel occupies the Leased Slip or Owner uses the Leased Storage Unit (a) general liability and property damage insurance in companies and in form and content acceptable to Marina with minimum limits of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ on account of bodily injuries,

death or property damage: (b) fire and extended coverage insurance in respect of the Leased Storage Unit and Marina's common facilities to the extent of one hundred percent (100%) of the full insurable value of the property covered and not less than the amount sufficient  to avoid the effect of the co-insurance provisions of the applicable policy, and, (c) any other insurance required by law. Owner will further deposit the policy or policies of such insurance or certificates thereof with Marina. If the nature of Owners' operation is such as to place any or all of its employees under the coverage of local worker's compensation or similar statutes, Owner shall also keep in force, at its expense, so long as this Lease remains in effect and during such other times as the Vessel occupies the Leased Slip or Owner uses the Leased Storage Unit, worker's compensation or similar insurance affording statutory coverage and containing statutory limits. If Owner shall not comply with the covenants made in this section 11, Marina may cause insurance as aforesaid to be issued in Owner's name, and in such event Owner agrees to pay, as additional rent, the premium for such insurance upon Marina's demand. All such policies shall name Marina as an additional insured and loss payee and shall contain a provision whereby the same cannot be cancelled or modified

unless Marina and any additional insured are given at least thirty (30) days prior written notice by certified or registered mail of such cancellation or modification. All general liability policies shall contain a provision that Marina, although named as an additional insured or loss payee, shall nevertheless be entitled to recovery under said policies for any loss occasioned to it by reason of the negligence of Owner, and that Marina shall be entitled to the benefits of such Insurance notwithstanding any willful act or other misconduct by Owner, or its agents or employees. Each liability insurance policy shall include a "cross liability" endorsement, providing coverage for claims brought by another insured under such policy. All public liability, property damage and other casualty insurance policies shall be written as not contributing with any coverage, which Marina may carry. Owner's insurance shall be primary and Marina's insurance, if any, shall be secondary.

12.   WAIVER OF SUBROGATION:   Owner hereby waives such cause of actions it may have or acquired against Marina which are occasioned by the negligence of Marina or its employees or agents resulting in the destruction of or damage to real or personal property belonging to Owner and located in or on the premises and which are caused by the hazards insured against in an extended coverage endorsement to a standard insurance policy approved for use in the State of Alabama. Owner further agrees to cause any insurance policy now owned or hereafter acquired covering the destruction or damage of such real property from the hazards covered by the aforementioned insurance policy and all endorsement thereto to include a waiver of subrogation or endorsement under which the insurance company waives the right of subrogation against Marina or any party to this agreement in case of destruction of or damage to the aforementioned real or personal property of any such party. If a waiver of subrogation is not available from the insurers of the Owner, this section 12 shall have no effect.

Initials _WM_

13    CREDIT AND GUARANTY INFORMATION:   Owner shall provide Marina with the imprint of a current and valid credit card. Owner also authorizes the Marina the ri    o obtain a current credit report for the purpose    granting credit to Owner and Owner agrees that Marina may obtain a credit report or reports from time to time during the term of the Lease.

Owner unconditionally guarantees the full, complete, and timely payment of all amounts now or hereafter owed by Owner to Marina and its successors and assigns. This Guaranty of Payment ("Guaranty") shall be unlimited in amount and the obligations of the undersigned under this Guaranty will not be released, terminated, or otherwise impaired as a result of: (i) any waiver, change, modification or amendment of any of the provision of any document delivered to Marina by Owner or to Owner by Marina; (ii) any extension of time granted by any party for the performance of any other party's obligations under any credit document; or (iii) any delay on the part of Marina in enforcing any right or remedy that Marina might have, and the undersigned hereby waives notice of all of the same. The undersigned further waives notice of acceptance of this Guaranty, notice of production or delivery of services to Owner and notice of any default by the Owner in performance of its obligations to Marina.

If the undersigned is a corporate entity, the undersigned officer of the guarantor hereby represents and warrants that he/she has read this Guaranty of Payment and has full authority to execute this document for and as the binding obligation of the guarantor for whom he/she is signing. As used herein, words in singular number include plural as may be appropriate, and vice versa.

14.   DISCLAIMER OF WARRANTY: MARINA DOES NOT MAKE ANY WARRANTIES OR REPRESENTATIONS HEREUNDER OTHER THAN THOSE EXPRESSLY SET OUT HEREIN AND MARINA'S OBLIGATION TO THE OWNER SHALL BE LIMITED TO THE UNDERTAKING EXPRESSLY ASSUMED IN THIS LEASE.

15.   HOISTS:   The parties agree that Marina shall not be liable for accidents or damage arising from the use of boat hoists. Termination of slip lease also terminates hoist lease.

16.   UNUSED SLIPS: RELOCATION:   The parties agree that during times when the Leased Slip is not occupied by the Vessel, the Marina shall have the right without proration or adjustment in rent to temporarily berth vessels being repaired or stored by the Marina in the Leased Slip. In the event the Marina uses any utilities metered through the Owner's meter, Owner shall be credited the cost of the utilities used by the Marina. During special events that require access to scales or for any other reason, Owner agrees to relocate Vessel promptly upon request by Marina.

17.   RULES AND REGULATIONS:   Owner agrees to comply with all rules and regulations of the Marina promulgated from time to time by Marina as fully as though set forth in this Lease. A copy of the current rules and regulations are attached hereto and made a part hereof. A copy of the current rules and regulations may be posted on the Marina bulletin board from time to time. Owners are responsible for reviewing rules and regulations prior to each use of their boat for possible additions or changes thereto, Marina shall have no obligation to amend this lease for any rules or regulations changes.

18.   AUTHORITY:   The person signing below for the Owner represents that he or she is the Owner or authorized agent of the Owner and acknowledges, understands and agrees to all the terms and conditions set forth hereinabove and the rules and regulations of the Marina.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the 24th day of June, 20 15.

Owner/Owner's Agent                                            SanRoc Cay Marina, L.L.C.

W. Michael Terrell                                            Patti Fish
Print Name                                                    By:

W Michael Terrell                                            General Manager
Signature                                                     Title

Initials W/M

PLL

# EXHIBIT B

## ASSIGNMENT OF LEASE AGREEMENT
## TO B&D MARITIME, INC.

WHEREAS SanRoc, LLC had several lease agreements with third party individuals/entities, whereby SanRoc, LLC agreed to lease commercial space and boat slips within the SanRoc Cay Marina complex located at 27267 Perdido Beach Blvd., Orange Beach, Alabama to lessees and said lessees agreed to pay rent to SanRoc, LLC for their space on said premises;

WHEREAS SanRoc, LLC assigned said lease agreements to Brickwork Investment Company, Inc. by and through the Master Assignment of Lease Agreements entered into on June 30, 2015 (hereinafter the "Master Assignment to Brickwork");

WHEREAS the Master Assignment to Brickwork included, among others leases, the marina boat slip leases (collectively attached hereto as Appendix I) (hereinafter referred to as the "Attached Subject Lease Agreements");

WHEREAS Brickwork Investment Company, Inc. has entered into an agreement to sell the condominium units that correspond with the Attached Subject Lease Agreement to B&D Maritime, Inc.;

WHEREAS B&D Maritime, Inc. wishes to continue leasing the unit to the lessee under the same terms set forth in the Attached Subject Lease Agreements;

THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, Brickwork Investment Company, Inc. does hereby convey, assign, and transfer all of its interest under the Attached Subject Lease Agreements (Appendix I) to B&D Maritime, Inc.;

AND WHEREAS B&D Maritime, Inc. does hereby accept and consent to said transfer and expressly assumes all rights, benefits, liabilities and obligations arising from said interest, either past, present or future.

IN WITNESS WHEREOF, Brickwork Investment Company, Inc. and B&D Maritime, Inc. hereby set their hands and seals this the _____ day of _____, 2015.

Brickwork Investment Company, Inc.

By: Mark D. Ryan
Its:  President

STATE OF ALABAMA

BALDWIN COUNTY

    I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Mark D. Ryan, whose name as President of Brickwork Investment Company, Inc., is signed to the foregoing Assignment, and who is known to me, acknowledged before me on this day that he, as such President, being informed of the contents of the said Assignment, executed the same voluntarily for and as the act of said company on the day the same bears date.

    Given under my hand and seal hereto affixed by me on this the _____ day of _____ , 2015.

NOTARY PUBLIC
My Commission Expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 22, 2015
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Page 2 of 3

B&D Maritime, Inc.

By: Randy Boggs
Its:  President

STATE OF ALABAMA

BALDWIN COUNTY

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Randy Boggs, whose name as President of B&D Maritime, Inc., is signed to the foregoing Assignment, and who is known to me, acknowledged before me on this day that, as such President, being informed of the contents of the said Assignment, he executed the same voluntarily for and as the act of said Company on the day the same bears date.

Given under my hand and seal hereto affixed by me on this the 3rd day of November, 2015.

NOTARY PUBLIC

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 22, 2015
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My Commission Expires:

Page 3 of 3

# EXHIBIT C

ELECTRONICALLY FILED
8/29/2022 5:24 PM
05-CV-2021-901257.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | |
|---|---|
| **KERRIE A. COE;** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| | * |
| **WALLACE BOAT RENTALS, LLC; B &** | * |
| **D MARITIME, INC., M.D. THOMAS** | * |
| **CONSTRUCTION, LLC and Defendants B** | * |
| **and C, being the persons, firms,** | * |
| **corporations, associates, partnerships, or** | * |
| **other entities responsible for the harms and** | * |
| **losses of the Plaintiff; all of whose names** | * |
| **and true legal identities are otherwise** | * |
| **unknown at this time but who will be added** | * |
| **by amendment when ascertained, jointly** | * |
| **and severally;** | * |
| | * |
| | * |
| **Defendants.** | * |

CIVIL ACTION NO.

CV-2021-901257

## SECOND AMENDED COMPLAINT

Plaintiff amends her Complaint showing she is entitled to relief as follows:

1.  Plaintiff KERRIE A. COE ("Coe") is an adult person.

2.  WALLACE BOAT RENTALS, LLC ("Wallace") is an Alabama limited liability company doing business in this State.

3.  Defendant B & D MARITIME, INC. ("B & D Maritime") is an Alabama corporation doing business in this State. Defendant B & D Maritime is substituted for fictitiously plead Defendant A.

4.  Defendant M.D. THOMAS CONSTRUCTION, LLC ("MDTC") is an Alabama limited liability company doing business in this State.

5.  Defendants B and C, whether singular or plural, are those persons, firms, corporations, associates, partnerships, or other entities whose wrongful conduct caused or

contributed to Plaintiff's injuries; all of whose names and true legal identities are otherwise unknown at this time but who will be added by amendment when ascertained, jointly and severally.

6.      Defendant B & D Maritime owns a marina with associated docks and piers located at 27267 Perdido Beach Blvd – Unit E, Orange Beach, Alabama 36561.

7.      Upon information and belief, the marina with associated docks, piers, walkways, and stairs (for ease of reference, the entirety of the marina is simply referred to as "marina" henceforth) was destroyed and/or damaged by Hurricane Sally. Defendant B & D Maritime hired Defendant MDTC to repair, rebuild, and/or construct the current marina. Defendants B & D Maritime and/or MDTC did not repair, rebuild, and/or construct the marina in compliance with applicable regulations and codes, and Alabama law.

8.      Defendant B & D Maritime leases the marina to Defendant Wallace. Defendant Wallace operates a boat rental company from the marina. In violation of Alabama law, Defendant Wallace failed to ensure the marina it had leased was safe for use by its customers.

9.      On June 2, 2021, Plaintiff Coe's family had rented a boat from Defendant Wallace that was docked at the subject marina. While Plaintiff Coe was stepping down from the top level of the marina's dock to the lower level, she fell. The step on which she fell was not properly marked, not the appropriate height/length, and lacked proper and necessary safety railings, among other safety hazards and violations.

10.     As a direct and proximate consequence of Defendants' tortious conduct, Mrs. Coe suffered severe personal and bodily injuries. Mrs. Coe broke both of her legs as a result of the fall. She suffered pain, anguish, and mental suffering; still so suffers, and will suffer in the future. She incurred medical bills and damages and will incur additional bills in the future. She incurred lost

wages and was temporarily disabled. She has suffered and incurred other additional damages as well.

## FIRST CAUSE OF ACTION

11.     Plaintiff adopts the allegations contained in the preceding paragraphs herein.

12.     As a result of Defendants' negligence, Plaintiff suffered injuries as aforesaid.

WHEREFORE, the above premises considered, Plaintiff demands judgment against Defendants jointly and severally, for compensatory damages and costs of this action, plus interest.

## SECOND CAUSE OF ACTION

13.     Plaintiff adopts the allegations contained in the preceding paragraphs herein.

14.     As a result of Defendants' wantonness, Plaintiff suffered injuries as aforesaid.

WHEREFORE, the above premises considered, Plaintiff demands judgment of and from Defendants jointly and severally, for actual and punitive damages in an amount to be determined at trial, plus interest as allowed by law, and costs.

Respectfully submitted,

*/s/ Jack Smalley III*
JACK SMALLEY III                    (SMA014)
*Attorney for Plaintiff*

LONG & LONG, PC
3600 Springhill Memorial Drive N
Mobile, Alabama 36608
T: (251) 445-6000
F: (251) 445-0282
Trip@longandlong.com

**ADDITIONAL DEFENDANT TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

**M.D. THOMAS CONSTRUCTION, LLC**
c/o Laura Thomas (Registered Agent)
4401 Money Bayou Drive
Orange Beach, Alabama 36561

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of August, 2022, a copy of the foregoing has been electronically filed with the Clerk of the Court using the AlaFile e-filing system, which will send notification of such filing to the following:

Mark D. Ryan, Esq.
Samuel K. Wilkes, Esq.
Ryan & Wilkes, P.C.
P.O. Box 528
Orange Beach, AL 36561
*Attorneys for Defendant, Wallace Boat Rentals, LLC*

Allen E. Graham, Esq.
E. Barrett Hails, Esq.
Phelps Dunbar, LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
*Attorneys for Defendant, B&D Maritime, Inc.*

*/s/ Jack Smalley III*
JACK SMALLEY III

**DISCOVERY TO BE SERVED WITH THE SECOND AMENDED COMPLAINT**

# EXHIBIT D



# MARKEL AMERICAN INSURANCE COMPANY
## GLEN ALLEN, VIRGINIA

**WATERCRAFT DECLARATIONS PAGE**

Page # 5

| Policy Number: MTD00000418383 | Agency Number: 10336 - 971249 | Effective Date/Transaction: 2021-08-04 Endorse |
|---|---|---|

**Policy Period: From** 02/06/2021 **To** 02/06/2022 **12:01 A.M. Standard Time at Your Mailing Address**

| Insured Name and Mailing Address | Your Agent  305-743-7711 |
|---|---|
| WALLACE BOAT RENTALS LLC<br>WILLIAM  M TERRELL<br><br>▆▆▆▆▆▆ | OFFSHORE RISK MANAGEMENT<br>807 FORREST AVE<br><br>COCOA, FL 32922 |

**DECLARED USAGE**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**   SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE A

| Hull Type Pontoon/Tritoon | # of Vessels  10 |
|---|---|

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**   Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up** None  **From**    **To**

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $▆▆▆ per occurrence | $▆▆▆ | $▆▆▆ |

**\*If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels. See Vessel Schedule for the individual vessel limits and deductible amounts.**

**Endorsement Premium Total** $▆▆▆    **Usage Premium** $▆

**Seasonal Rating:** More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium $▆ | Policy Taxes/Fees $▆ | TOTAL ANNUAL PREMIUM  $▆▆▆ |
|---|---|---|

Amend Schedule
REMOVE 2 PONTOONS & PWC

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**    Please see the back of this form.

| Signed on    8/9/2021 | **at** COCOA, FL | *[signature]* |
|---|---|---|
| | | Insured          8/9/2021 |

MTD5000-0218

WALLACE_000001



# MARKEL AMERICAN INSURANCE COMPANY

## WATERCRAFT DECLARATIONS PAGE

| Policy Number: | Primary Usage and ID | Agency Number: | Page Number |
|---|---|---|---|
| MTD00000418383 | Rental 2 | 10336 - 971249 | 6 |

MTD5001-0215 - The Markel Tradesman Policy
MTD5018-0215 - Rental Usage Endorsement
MTD5124-0215 - Policy Change Endorsement
MTD5200-0317 - General Amendatory Endorsement
MIL1214-0917 - Trade or Economic Sanctions Endorsement

8/9 2021

MTD5000-0218

WALLACE_000002



# MARKEL AMERICAN INSURANCE COMPANY

### GLEN ALLEN, VIRGINIA

| WATERCRAFT SCHEDULE PAGE |
|---|

Page # 7

| Policy Number: | Agency Number: | Effective Date/Transaction: | |
|---|---|---|---|
| MTD00000418383 | 10336 - 971249 | 2021-08-04 | Endorse |

| Policy Period: From  02/06/2021    To 02/06/2022  12:01 A.M. Standard Time at Your Mailing Address |
|---|

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**    SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE A

| Hull Type Pontoon/Triton | # of Vessels    10 |
|---|---|

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

| Lay-Up  None | From | To |
|---|---|---|

MTD5000-0218 Page # 7                                                                                 Rental 2

| INDIVIDUAL VESSEL INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Manufacturer | HIN # | Limit | Deductible | | |
| | | SOLID | ██████ | n/a | n/a | | |
| | | SOLID | ██████ | n/a | n/a | | |
| | | SOLID | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |

WALLACE_000003

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## POLICY CHANGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

| | |
|---|---|
| **Usage ID** | Rental - 2 |
| **Policy Change Description** | RENTAL LOCATIONS:<br>SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL 36561<br>27194 MARINA RD, ORANGE BEACH, AL 36561 |

All other terms, conditions, and limitations of the policy remain unchanged.



3/7/2018

WALLACE BOAT RENTALS LLC



Hi WILLIAM:

Thank you for putting your trust in Markel, we are pleased you chose us to protect your business.

It is important that you review the enclosed policy documents to make sure everything is correct. If you believe any changes are required, or if you need additional help, please call your agent reflected on the Declarations Page.

If you'd like to make a payment by phone, please call your agent. To make a payment online, please visit **markelamerican.com/pay**.

Sincerely,
**Markel**
Specialty Insurance by Real Specialists



# PRIVACY POLICY AND OFAC NOTICE

We would like to thank you for your business and let you know we respect your privacy. We are committed to protecting your personal information. Please read this notice, which outlines our privacy policies and practices.

We collect nonpublic information about you from the following sources:
- Information we receive from you on applications or other forms such as your name and address;
- Information about your transactions with us, our affiliates, or others;
- Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic information about our customers or former customers to anyone, except as permitted by law.**

We may disclose nonpublic personal information about you to the following types of third parties:
- Insurance agents and/or brokers that you have chosen to work with;
- Non-affiliated third parties as permitted by law to provide services you have requested.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:
- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;
as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

WALLACE_000006



# MARKEL AMERICAN INSURANCE COMPANY

---

## POLICYHOLDER NOTICE

---

By being a valued customer, in the near future, you will be receiving essential information to assist your loss prevention plan. You never know when a loss may occur, it is important to review and act on the information promptly to minimize risk and adverse consequences of an accident.

What you will be receiving:

- Newsletter outlining important information to minimize risk to your business.

- Warning disclosure stickers and signage for your boats.

If a policy charge was made for a site inspection, a third party vendor, Technical Insurance Services, will be in contact to arrange for a site inspection and review your operation.

Thank you for placing your rental business insurance with us.



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT DECLARATIONS PAGE

Page # 4

| Policy Number:<br>MTD00000418383 | Agency Number:<br>10336 - 971249 | Effective Date/Transaction:<br>2018-02-06      New |
|---|---|---|

| Policy Period:  From  02/06/2018   To 02/06/2019  12:01 A.M. Standard Time at Your Mailing Address |
|---|

| Insured Name and Mailing Address<br>WALLACE BOAT RENTALS LLC<br>WILLIAM M TERRELL | Your Agent  305-743-7711<br>OFFSHORE RISK MANAGEMENT<br>807 FORREST AVE<br><br>COCOA, FL 32922 |
|---|---|

**DECLARED USAGE**

**Primary Usage and ID** Rental 1

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**      SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

**Hull Type** PWC                                         **# of Vessels**   9

**Mooring Location**   27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None                               **From**              **To**

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $▮▮▮  per occurrence | $▮▮▮ | $▮▮▮ |

*If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels. See Vessel Schedule for the individual vessel limits and deductible amounts.

| Endorsement<br>Premium Total $▮▮ | Usage Premium   $▮▮▮▮ |
|---|---|

Seasonal Rating: More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium  $▮▮▮ | Policy Taxes/Fees $▮▮▮ | TOTAL ANNUAL PREMIUM  $▮▮▮▮ |
|---|---|---|

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**
MTD5001-0215, MTD5018-0215, MTD5124-0215, MTD5200-0317

| Signed on    3/7/2018     at  COCOA, FL | *Barua a. King* |
|---|---|
| | Insured                          3 7 2018 |

MTD5000-0215

WALLACE_000008



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT SCHEDULE PAGE

Page # 5

| Policy Number: | Agency Number: | Effective Date/Transaction: | |
|---|---|---|---|
| MTD00000418383 | 10336 - 971249 | 2018-02-06 | New |

**Policy Period:  From** 02/06/2018     **To** 02/06/2019  **12:01 A.M. Standard Time at Your Mailing Address**

**Primary Usage and ID** Rental 1

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**      SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

**Hull Type** PWC                    **# of Vessels**   9

**Mooring Location**   27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None                    **From**         **To**

MTD5000-0215 Page # 5                                             Rental 1

## INDIVIDUAL VESSEL INFORMATION

| | | Manufacturer | HIN # | Limit | Deductible | | |
|---|---|---|---|---|---|---|---|
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |
| | | YAMAHA | ███████ | n/a | | | |



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

**MARKEL**

| WATERCRAFT DECLARATIONS PAGE | Page # 6 |
|---|---|

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MTD00000418383 | 10336 - 971249 | 2018-02-06      New |

**Policy Period: From  02/06/2018   To 02/06/2019  12:01 A.M. Standard Time at Your Mailing Address**

| Insured Name and Mailing Address | Your Agent  305-743-7711 |
|---|---|
| WALLACE BOAT RENTALS LLC | OFFSHORE RISK MANAGEMENT |
| WILLIAM M TERRELL | 807 FORREST AVE |
| ▮▮▮▮▮▮ | |
| ▮▮▮▮▮▮▮▮ | COCOA, FL 32922 |

**DECLARED USAGE**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**      SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

**Hull Type** Pontoon/Tritoon                           **# of Vessels**  7

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up** None                          **From**               **To**

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $▮▮▮▮ per occurrence | $▮▮▮ | $▮▮▮ |

*If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels. See Vessel Schedule for the individual vessel limits and deductible amounts.

| Endorsement Premium Total $ | Usage Premium $ |
|---|---|

Seasonal Rating: More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium $▮▮▮ | Policy Taxes/Fees $ | TOTAL ANNUAL PREMIUM $▮▮▮ |
|---|---|---|

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**
MTD5001-0215, MTD5018-0215, MTD5124-0215, MTD5200-0317

| Signed on   3/7/2018   at COCOA, FL | |
|---|---|
| | *Dana G. King* |
| | Insured                                    3/7/2018 |

MTD5000-0215

WALLACE_000010



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT SCHEDULE PAGE

Page # 7

| Policy Number:<br>MTD00000418383 | Agency Number:<br>10336 - 971249 | Effective Date/Transaction:<br>2018-02-06    New |
|---|---|---|

**Policy Period: From** 02/06/2018    **To** 02/06/2019  **12:01 A.M. Standard Time at Your Mailing Address**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**      SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

**Hull Type** Pontoon/Tritoon              **# of Vessels**  7

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None                    **From**          **To**

---

MTD5000-0215 Page # 7                                          Rental 2

### INDIVIDUAL VESSEL INFORMATION

| | | Manufacturer | HIN # | Limit | Deductible | | |
|---|---|---|---|---|---|---|---|
| | | BEACH CAT | ███████ | n/a | | | |
| | | HARRIS MFG/FLOTE-BOTE | ███████ | n/a | | | |
| | | HARRIS MFG/FLOTE-BOTE | ███████ | n/a | | | |
| | | BENTLEY | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |

WALLACE_000011

 **MARKEL AMERICAN INSURANCE COMPANY**

## CONSUMER NOTICE OF INSURANCE SCORING

To offer an accurate quote in connection with this application for insurance, we will review the unit owner's credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of the unit owner's insurance score. Future reports may be used to update or renew insurance.

MAM5120-0407

Page 1 of 1

WALLACE_000012



# MARKEL AMERICAN INSURANCE COMPANY

# THE MARKEL TRADESMAN POLICY

WALLACE_000013

TABLE OF CONTENTS

**THE MARKEL TRADESMAN POLICY**

READ YOUR POLICY CAREFULLY.

**Beginning on Page**

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**WARRANTIES & CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

**GENERAL EXCLUSIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

**PHYSICAL DAMAGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

**WATERCRAFT LIABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

**OIL POLLUTION LIABILITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

## INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page and any schedules, which are part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page, any schedule and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

## DEFINITIONS

Throughout this policy, most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your", and "yours" are defined, but do not appear in **bold**. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined in the sections they appear.

1.  You and your mean the person(s) or organization(s) named on the Declarations Page as the 'Insured'.

2.  We, our and us refer to the company, shown on the Declarations Page, which is providing this insurance.

3.  **Actual cash value** means the **replacement cost** of the lost or damaged property less depreciation.

4.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5.  **Constructive total loss** means that the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

6.  **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7.  **Declared usage** means activities or operations essential to the type of business shown on the Declarations Page or Schedule Page as 'Declared Usage'.

8.  **Design defect** means a flaw in the structural plan of the **insured vessel's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's** defects.

9.  **First named insured** means the named 'Insured' listed first on the Declarations Page.

10. **Insured vessel** means:
    a.  the vessel as shown on the Declarations Page or Schedule Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the vessel; or
    b.  a **newly acquired vessel**.

11. **Latent defect** means a flaw in the material of the **insured vessel's** hull or machinery existing when the **insured vessel** or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects**, or **design defects**.

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured vessel's** hull or machinery or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects**, or **design defects**.

13. **Newly acquired vessel** means a vessel that you acquire during the policy period that replaces an **insured vessel** shown on the Declarations Page or Schedule Page, which is similar to the **insured vessel(s)** described on the Declarations Page or Schedule Page. A **newly acquired vessel** also includes an additionally acquired vessel, which is similar to the **insured vessel(s)** described on the Declarations Page or Schedule Page that does not replace a vessel described on the Declarations Page or Schedule Page, provided we insure all other vessels that you own. The **newly acquired vessel** must exclusively be used for the **declared usage**. No coverage exists under any circumstance for vessels that are not similar to an **insured vessel** shown on the Declarations Page or Schedule Page, or is determined by us to be in an unseaworthy condition.

If we determine the new vessel to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new vessel from the date you purchased the vessel, provided that you have notified us within 30 days following delivery and pay any additional premium required.

A **newly acquired vessel** will have the same coverage we provide for vessels on the Declarations Page or Schedule Page with the same **declared usage**. The limit of insurance applicable to any **newly acquired vessel** for Hull Coverage will be the lesser of its **actual cash value** or your purchase price, but not more than 150% of the highest value shown on the Declarations Page or Schedule Page for one vessel.

14. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

15. **Property damage** means damage to tangible property.

16. **Seaworthy** means fit for the **insured vessel's** intended purpose. Seaworthy means the **insured vessel** and its equipment is well maintained and in good repair so that it cannot be damaged by ordinary weather or water conditions or the rigors of normal use. Seaworthy applies not only to the physical condition of the **insured vessel**, but to all its parts, equipment and gear, it also includes assignment of a suitable captain or crew.

17. **Windstorm** means tropical depressions, tropical storms or hurricanes as designated by the National Weather Service and/or National Hurricane Center.

## WARRANTIES & CONDITIONS

1. Seaworthiness Warranties
   You warrant to us the following:
   a. It is warranted that the **insured vessel** is **seaworthy** at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.
   b. It is warranted that the **insured vessel** shall be maintained in a **seaworthy** condition during the entire policy period. Violation of this warranty to maintain the **insured vessel** in a **seaworthy** condition will render coverage void for any damage or loss claimed under this policy where such condition or conditions of unseaworthiness directly or indirectly caused or contributed to any damage or loss for which you make a claim.

2. Conditions
   If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:
   a. The **insured vessel** is to be used only for the **declared usage**.
   b. You possess all required federal, state and local permits and licenses for the **declared usage**.
   c. The maximum number of passengers aboard the **insured vessel** shall not exceed the lesser of:
      i. The limit for passengers or weight by the manufacturer;
      ii. The limit for passengers or weight by the Coast Guard or other legal entity with controlling authority; or
      iii. The limit for passengers as shown on the Schedule Page.
   d. While any captain or crew is under the influence of alcohol in excess of the legal amount defined by the laws of the state where this policy was delivered.
   e. While any captain or crew has consumed or is under the influence of marijuana in any amount, any illegal drug in any amount, or any prescription drug (other than marijuana) in excess of the amount prescribed to the captain or crew by a licensed physician or where a warning exists which indicates that the substance could impair physical or cognitive ability.

WALLACE_000016

    f.  The **insured vessel** may not be transported overland outside of the Continental United States. While being towed overland on a trailer, the combined weight of the **insured vessel**, trailer and any equipment may not exceed the towing capacity as provided by the manufacturer of the towing vehicle. If the **insured vessel** is being transported by contract or common carrier, the contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured vessel**. This policy is then excess to the coverage provided by the licensed contract or common carrier.

    g.  If 'Lay-Up' is shown on the Declarations Page or Schedule Page, during the lay-up period shown:

        i.  If the Declarations Page or Schedule Page indicates that lay-up is afloat, then the **insured vessel** must be in a safe berth for storage and the **insured vessel** may not be operated except as required to change berths within the immediate berthing location. However, if you are required to move the **insured vessel** for the purpose of safety, repairs, and alterations or for betterments and improvements, coverage will not be suspended.

        ii.  If the Declarations Page or Schedule Page indicates that lay-up is ashore, then the **insured vessel** may not be afloat.

        iii.  If the Declarations Page or Schedule Page indicates that lay-up is on a lift, then the **insured vessel** is warranted to be winterized and out of commission on a lift or ashore.

3.  Policy Period/Territory

This policy applies only to loss which occurs during the policy period as shown on the Declarations Page or Schedule Page, and:

    a.  on land within the United States of America and Canada; or

    b.  on land or water within the 'Navigation Limits' shown on the Declarations Page or Schedule Page.

4.  Misrepresentation or Fraud

All insurance provided by this policy shall be null and void if you, at any time, including renewal(s), either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. Any and all changes in any fact(s) or circumstance(s) material to our acceptance of this risk arising during the term of this policy and/or any renewal(s) must be disclosed to us as soon as possible, and any failure to make such disclosure during the term of the policy shall also render this policy null and void. No action or inaction by us shall be deemed a waiver of this provision.

5.  Notice of Cancellation

You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

We may cancel this policy by delivering or mailing notice of cancellation to the **first named insured** at the last address shown in our records at least:

    a.  ten (10) days before the cancellation takes effect if:

        i.  the cancellation is for nonpayment of premium; or

        ii.  this policy has been in effect for less than sixty (60) days and is not a renewal policy.

    b.  thirty (30) days before the cancellation takes effect in all other cases.

After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:

    a.  for nonpayment of premium due;

    b.  for misrepresentation or fraud;

    c.  for substantial breach of your duties under this policy;

    d.  if the risk changed substantially since the policy was issued; or

    e.  for failure to comply with our underwriting requirements within sixty (60 days) of the term effective date.

Proof of mailing of this notice to the **first named insured** will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

This policy will terminate without any written notice when we pay for a total loss or a **constructive total loss**.

WALLACE_000017

6.  Conformity to Statute
This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law will apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7.  Policy Changes
No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage.

8.  Legal Action Against Us
    a.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.
    b.  With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.
    c.  With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.
    d.  Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9.  No Benefits to Others
No person or organization which has custody of the **insured vessel**, and is not an **insured**, will benefit from this insurance.

10. Transfer of Interest
All coverage will cease without further notice to you or to your representative(s) in the event of any sale, transfer, mortgage, pledge, change in legal interest or ownership over the:
    a.  **insured vessel**;
    b.  policy; or
    c.  the legal entity or organization named as the 'Insured' in the policy.

If the **insured** is an individual, in the event of your death, this policy will remain in effect until the end of the policy period for:
    a.  persons covered under this policy at the time of your death;
    b.  your legal representative while acting within the scope of duties of a legal representative; or
    c.  any person having proper custody of the **insured vessel** until a legal representative is appointed.

11. Right of Recovery
You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental that include a waiver of subrogation provision will not void this policy.

12. Claim or Suit Against You
You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

13. General Duties Following a Loss
In the event of any loss which may be covered by this Policy, you or any 'Loss Payee' making a claim must:
    a.  Give us immediate notice of any accident, loss, damage, or expense that may be covered under this policy. The notice should state with respect to the incident:

    i.   where, when and how it occurred;
    ii.  the property concerned;
    iii. the extent of injuries or damages involved;
    iv. names and addresses of injured or damaged parties and all witnesses.

b.  Not assume any obligation, admit any liability or incur any expense for which we may be liable without our written permission.

c.  Immediately notify the authorities of any theft, vandalism or malicious damage to your insured property, if any injury is involved, or if required by law.

d.  As often as we may reasonably require:
    i.   permit us to inspect all damages before repairs are made;
    ii.  submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;
    iii. produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative.

Any person presenting a claim for **bodily injury** must:

a.  submit to our requests for physical examinations by physicians of our choice. We will pay for the costs of the examinations;

b.  permit us to obtain pertinent copies of medical reports and records for any medical condition which is or is not related to the **bodily injury** for which a claim is made;

c.  provide us with a written release to obtain copies of medical reports and records for any medical condition which is or is not related to the **bodily injury** for which a claim is made.

If you do not comply with these general duties, then no coverage for the loss will be provided.

14. Other Insurance
This policy is excess over any other valid and collectible insurance.

15. Nonrenewal
If we decide not to renew your policy, we or our authorized representative will mail to the **first named insured**, at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the **first named insured** at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any 'Loss Payee' as shown on the Declarations Page or Schedule Page. If we decide not to renew your policy, our mailing of notice to the address of the **first named insured** shown on the Declarations Page will constitute proof of notice as of the date we mail it.

## GENERAL EXCLUSIONS

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1. Extended Radioactive Contamination
  a.  ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
  b.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
  c.  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
  d.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

WALLACE_000019

However, if while the **insured vessel** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in items a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2.  War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3.  The lawful or unlawful capture, seizure, requisition or detainment of your **insured vessel** by a civil authority or any attempt at any of these.

4.  An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5.  Preparation for or participation in any race, speed, or stunting contest.

6.  Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

7.  No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of sexual molestation, corporal punishment, physical or mental abuse or the transmission of a communicable disease.

## PHYSICAL DAMAGE

1.  Coverage
    a.  Hull Coverage
        i.  Coverage
            We will cover sudden accidental direct physical loss or damage to the **insured vessel**. We will provide coverage for **insured vessel's** equipment removed from it and temporarily stored separately ashore during the term of this policy.

        ii.  Under Hull Coverage, we do not cover:
            1)  dock boxes, moorings, cradles, lifts or shore stations;
            2)  items which are covered elsewhere under this policy; or
            3)  fuel.

2.  Loss Conditions
    a.  Deductibles
        i.  We will not pay for loss, damage or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page or Schedule Page.
        ii.  If a Windstorm Deductible is shown on the Declarations Page or Schedule Page, then the Windstorm Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from any **windstorm**.
        iii.  In the event of a total loss or **constructive total loss**, when the Hull coverage is Agreed Value, the 'Hull' deductible shown on the Declarations Page or Schedule Page will be waived, unless caused by **windstorm**.

    b.  Salvage and Abandonment
        If we make payment under this policy for loss or damage and there is salvage value, we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

WALLACE_000020

We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

c.  Payment of Loss
We will pay losses within 30 days after the earliest of the following:
   i.   we reach agreement with you;
   ii.  final judgment is rendered in a court of law;
   iii. an appraisal award is filed with us; or
   iv.  a proof of loss is accepted by us.

Payment will be made to the **first named insured**. If a 'Loss Payee' is also named on the Declarations Page, any loss will be paid to the **first named insured** and the 'Loss Payee' as interests appear.

d.  Appraisal
If you dispute our evaluation of the amount of the loss, then you must submit a written request for appraisal within one year of the date of loss. You and we will then each appoint and pay for a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction.

e.  Protect and Recover
In the event of a covered loss to the **insured vessel**, you must protect the **insured vessel** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Hull coverage, but not to exceed the applicable **insured vessel** limit for 'Hull' on the Schedule Page. We will not cover any loss incurred due to your failure to protect the **insured vessel**.

## WATERCRAFT LIABILITY

Coverage
We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured vessel** arising from the **declared usage**.

A yacht club, marina or other similar facility is an additional insured for **property damage** and **bodily injury**, for liability arising from the ownership, use and operation of the **insured vessel**, by an **insured**. A yacht club, marina or other similar facility will not be provided a separate defense.

We will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured vessel**. if you are legally obligated to do so. This is not additional insurance, but is included in the limit of 'Watercraft Liability' coverage.

Wreck means the **insured vessel** has been damaged to such an extent as to render the **insured vessel** not navigable and we determine the **insured vessel** to be a total or **constructive total loss**.

What We Pay
We will pay no more than the limit for 'Watercraft Liability' shown on the Declarations Page for all damages or losses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or Schedule Page, or the number of watercraft involved.

**Supplemental Payments**

In addition to the limit of liability shown on the Declarations Page for 'Watercraft Liability', we shall pay on behalf of an **insured**:

1) premium on appeal bonds and other bonds required in any suit we defend, but not for bonds in amounts which exceed the limit of liability for 'Watercraft Liability' shown on the Declarations Page;

2) any post judgment interest which is earned before we make payment, but only to the extent of the proportion of the damages payable under this policy; and

3) loss of earnings of up to $50.00 a day for any **insured's** attendance at court proceedings at our request.

**Exclusions**

We will not pay for:

1) any fine or civil or criminal penalty assessed by any civil or governmental authority;

2) liability assumed under any contract or agreement;

3) **bodily injury** or **property damage** sustained by any **insured**;

4) **property damage** to property or cargo owned by, rented to, used by or in the care of any **insured**;

5) **bodily injury** or **property damage** caused by or resulting from snorkeling, swimming, scuba diving, skin diving, helmet diving or any similar activity, including **bodily injury** which occurs while disembarking, or boarding the **insured vessel** for snorkeling, swimming, scuba diving, skin diving or helmet diving, and any aggravation of any prior injury;

6) **bodily injury** or **property damage** occurring while the **insured vessel** is being used for water-skiing, aquaplaning, or any similar activity in which a person(s) or object(s) are towed, and until such operations have ended and the person(s) or object(s) engaged in such activity have been safely taken aboard the **insured vessel** or landed safely elsewhere;

7) **bodily injury** or **property damage** sustained during any parasail activities;

8) **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

   a) causing or contributing to the intoxication of any person;

   b) furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   c) violating any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

9) **bodily injury** or **property damage** while the **insured vessel** is being transported on land;

10) **bodily injury** or **property damage** resulting from salvage or towing operations except in emergency situations or as required by statute or regulation;

11) any liability covered or excluded under the **OIL POLLUTION LIABILITY** section of this policy;

12) **bodily injury** or **property damage** resulting from intentional or accidental discharge of a firearm, harpoon gun, speargun, bow and arrow, or any similar devices that shoot a projectile.

13) **bodily injury** or **property damage** resulting from the intentional or accidental discharge of an explosive material or explosive device (including any type of fireworks) that could be controlled by any **insured**.

14) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law;

15) any obligation for which any **insured** or the **insured vessel** may be liable to paid captain or paid crew as defined under the Jones Act or General Maritime Law, including seaman's remedies for negligence, unseaworthiness, or maintenance and cure;

16) punitive or exemplary damages or associated interest; or

17) **property damage** caused directly or indirectly by any maintenance, repair or servicing to the **insured vessel** by any yacht club, marina or other similar facility that is an additional insured.

**Defense**

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Watercraft Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## OIL POLLUTION LIABILITY

**Coverage**
We will cover:
1) the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of an **oil pollution incident**;
2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;
3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;
4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;
5) the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured vessel** in an accident that is specific in place and time within the policy period.

**What We Pay**
We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or Schedule Page, or the number of watercraft involved.

**Exclusions**
We will not pay for:
1) liability assumed under any contract or agreement;
2) any fine or penalty assessed by any governmental unit;
3) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);
4) **property damage** sustained by an **insured**;
5) liability for natural resource damage unless legal action commences within one (1) year of the incident;
6) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority; or
7) punitive or exemplary damages or associated interest.

**Defense**
We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

This Policy is signed at the Home Office of the company by its president and secretary.

### MARKEL AMERICAN INSURANCE COMPANY
Glen Allen, Virginia

Richard R. Grinnan, Secretary                    F. Michael Crowley, President
**Administrative Office:** P.O. Box 906, Pewaukee, WI 53072-0906, 800-236-2862

WALLACE_000023

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## RENTAL USAGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows:

**DEFINITIONS**, is amended by adding the following:

**Insured** means you or your employees.

An **insured** does not include any:
a.   person operating the **insured vessel** under the terms of any rental agreement;
b.   employee using the **insured vessel** for personal use under a rental agreement;
c.   employee operating the **insured vessel** for a renter under a rental agreement; or
d.   person, organization or their agent or employee who operates a marina, shipyard, boat repair facility, yacht club, sales agency, yacht broker, boat service station, salvor, towing service or like service organization.

**Rental** means the **insured vessel** will be rented to a person(s) for pleasure use for a specified period. You will not provide any captain or crew to the renter; however, a renter may hire a captain or crew member that is not an **insured** to assist.

### WARRANTIES & CONDITIONS

**WARRANTIES & CONDITIONS**, 2. Conditions, is amended by adding the following items:

- Any rental contract which has been submitted to and approved by us, shall be executed between you and any person or organization who uses, rents, hires or leases the **insured vessel** with or without an exchange of consideration or payment for use of the **insured vessel**.
- Copies of rental contracts will be held by you for a period of no less than 7 years after the contract was terminated.
- All persons renting the **insured vessel** must be at least 18 years of age and possess a current valid driver's license.
- All permitted operators must meet all required qualifications to operate the **insured vessel** legally.
- An **insured** shall not fuel an **insured vessel** with any person aboard.
- Prior to any **rental**, all operators will be provided:
  i.   instruction covering the operational characteristics of the **insured vessel**;
  ii.   instruction covering boating regulations unique to the area of operation, including but not limited to speed, distance to maintain from other watercraft or swimmers, no wake zones, channel routes, etc.;
  iii.   instruction covering any unique characteristics of the body of water including but not limited to tidal flow, depth of water and currents, etc.;
  iv.   appropriate personal flotation devices for each person aboard as required by the Coast Guard or other legal entity with controlling authority; and
  v.   appropriate safety equipment as required by the Coast Guard or other legal entity with controlling authority.

## RENTAL USAGE ENDORSEMENT

### Physical Damage

**PHYSICAL DAMAGE**, 1. Coverage, a. Hull Coverage, i. Coverage is deleted in its entirety and replaced with the following:

i. Coverage
We will cover sudden accidental direct physical loss or damage to the **insured vessel** from an external cause.  We will provide coverage for **insured vessel's** equipment removed from it and temporarily stored separately ashore during the term of this policy.

### Physical Damage Exclusions

**PHYSICAL DAMAGE**, 1. Coverage a. Hull Coverage is amended by adding the following item:

- Exclusions
  We will not pay for loss, damage or expense caused by or resulting from:
  1) wear and tear, gradual deterioration, inherent vice, insects, marine life, aquatic mammals, vermin, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering, osmosis, blistering, mold, mildew, wet or dry rot;
  2) failure to maintain the **insured vessel** (including its machinery and equipment) in good condition so that the **insured vessel** cannot be damaged by ordinary weather or water conditions or the rigors of normal use;
  3) diminution of value;
  4) **windstorm** for any canvas.  Canvas as used in this section means any protective cover made of canvas or manmade material designed as an enclosure or to provide protection. It includes any see through material commonly known as eisenglass or similar material attached thereto, and hardware such as zippers, buttons and snaps;
  5) mechanical breakdown, electrical failure or engine overheating;
  6) by the wrongful conversion, embezzlement or secretion by a mortgagee, vendee, lessee or other person in lawful possession of the **insured vessel** under a mortgage, conditional sale, lease or other contract or agreement whether written or verbal;
  7) **manufacturer's defects, design defects** or **latent defect.**

### Watercraft Liability Deductible

**WATERCRAFT LIABILITY**, What We Pay, is amended by adding the following:

Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the deductible amount shown on the Declarations Page for 'Watercraft Liability'. The deductible shall apply once to all payments made under this section as a result of any one **occurrence**, regardless of the number of persons or organizations who sustained damages because of that **occurrence**.

The terms of this insurance, including those with respect to our duty to defend any suits seeking damages and your duties following any loss apply irrespective of the application of the deductible amount. We maintain the right at our discretion to pay and resolve any claim within the Watercraft Liability coverage limit. If we exercise our discretion to pay any claim, you are obligated to pay your deductible to us or to the claimant as we direct you.

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY

## POLICY CHANGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

| | |
|---|---|
| **Usage ID** | Rental - 1 |
| **Policy Change Description** | RENTAL LOCATIONS: SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL 36561 BEAR POINT MARINA, 5749 BAY LA LAUNCH AVE. ORANGE BEACH, AL 36561 |

All other terms, conditions, and limitations of the policy remain unchanged.

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## POLICY CHANGE ENDORSEMENT

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

**Usage ID**          Rental - 2

**Policy Change**     RENTAL LOCATIONS:
**Description**       SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL
                      36561 BEAR POINT MARINA, 5749 BAY LA LAUNCH AVE. ORANGE BEACH, AL
                      36561

All other terms, conditions, and limitations of the policy remain unchanged.

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

We are required to send you this notice pursuant to recently revised federal legislation concerning terrorism insurance. We are sending this notice to you because you are the named insured on this policy issued by Markel American Insurance Company.

Please be advised that coverage for certain acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: the term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ 000.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

Initially, we have opted not to include an additional charge for terrorism coverage on all in-force policies that were previously written without a terrorism exclusion. However, once we have a better understanding of the exposure and rating factors associated with terrorism coverage, we may determine what premium is appropriate for terrorism coverage and charge this premium on all new and renewal policies.

**WE ARE REQUIRED BY THE TERRORISM RISK INSURANCE EXTENSION ACT, AS AMENDED, TO NOTIFY YOU THAT, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE AND TO NOTIFY YOU OF THE AMOUNT OF YOUR PREMIUM THAT IS ATTRIBUTABLE TO SUCH COVERAGE. YOU DO NOT NEED TO TAKE ANY ACTION.**

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## GENERAL AMENDATORY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows:

**WATERCRAFT LIABILITY**, Exclusions, item 4) is deleted in its entirety and replaced by the following:

4) **property damage** to property or cargo owned by, rented to, used by or in the care of any **insured**. However, this exclusion will not apply to **property damage** to docks that are rented or leased to the **insured**;

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY
# MARKEL INSURANCE COMPANY

---

## POLICYHOLDER DISCLOSURE OF FEES

---

Please be advised that policyholders will be subject to the following fees, where applicable.

**Installment Fees**
An Installment Fee will be included on any payment when the policy is paid using an installment plan. The Installment Fee is $2.00 per payment when the policyholder is enrolled in an automatic payment plan. The Installment Fee is $6.00 per payment when the policyholder is not enrolled in an automatic payment plan.

**Reinstatement Fee**
A Reinstatement Fee of $20.00 will apply on any reinstated policy which had previously canceled or lapsed due to non-payment of premium.

STFEE-0118

WALLACE_000030





**USPS CERTIFIED MAIL**

9214 8901 7301 4105 2300 0583 68

*312 COURTHOUSE SQUARE*
*SUITE 10*
*BAY MINETTE, AL. 36507*

05-CV-2023-900897.00

To:  MARKEL AMERICAN INSURANCE COMPANY
     C/O CORPORATION SERVICE C
     641 SOUTH LAWRENCE STREET
     MONTGOMERY, AL 36104

# NOTICE OF ELECTRONIC FILING

### IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

### B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY
### 05-CV-2023-900897.00

The following complaint was FILED on 7/25/2023 4:50:15 PM

Notice Date:     7/25/2023 4:50:15 PM

**BRENDA Q. GANEY**
**CIRCUIT COURT CLERK**
BALDWIN COUNTY, ALABAMA
312 COURTHOUSE SQUARE
SUITE 10
BAY MINETTE, AL 36507

251-937-0280
brenda.ganey@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>05-CV-2023-900897.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA
### B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY

**NOTICE TO:** MARKEL AMERICAN INSURANCE COMPANY  C/O CORPORATION SERVICE C 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), NORMAN MATT STOCKMAN

*(Name(s) of Attorney(s))*

WHOSE ADDRESS(ES) IS/ARE: P.O. BOX 123, MOBILE, AL 36601

*(Address(es) of Plaintiff(s) or Attorney(s))*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of B&D MARITIME, INC.
pursuant to the Alabama Rules of the Civil Procedure.

*[Name(s)]*

| 07/25/2023 | /s/ BRENDA Q. GANEY | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.    /s/ NORMAN MATT STOCKMAN

*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____

*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,

*(Name of Person Served)*                          *(Name of County)*

Alabama on _____.

*(Date)*

_____                          *(Address of Server)*

*(Type of Process Server)*          *(Server's Signature)*          _____

_____          _____

*(Server's Printed Name)*          *(Phone Number of Server)*

DOCUMENT 1

ELECTRONICALLY FILED
7/25/2023 4:50 PM
05-CV-2023-900897.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca:<br>05 |
|---|---|---|
| | | Date of Filing:       Judge Code:<br>07/25/2023 |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA
### B&D MARITIME, INC. v. MARKEL AMERICAN INSURANCE COMPANY

**First Plaintiff:** ☑ Business   ☐ Individual   **First Defendant:** ☑ Business   ☐ Individual
☐ Government   ☐ Other   ☐ Government   ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ EPFA - Elder Protection From Abuse
- ☐ QTLB - Quiet Title Land Bank
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING       A ☐ APPEAL FROM DISTRICT COURT       O ☐ OTHER

R ☐ REMANDED       T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO       Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P. for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
STO064       7/25/2023 4:50:10 PM       /s/ NORMAN MATT STOCKMAN
_____       Date       Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   ☐ YES ☐ NO ☑ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:**   ☐ YES ☐ NO

ELECTRONICALLY FILED
7/25/2023 4:50 PM
05-CV-2023-900897.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | | |
|---|---|---|
| **B&D MARITIME, INC.,** | * | |
| | * | |
| **Plaintiff,** | * | **CASE NO.** |
| | * | |
| **v.** | * | _____ |
| | * | |
| **MARKEL AMERICAN INSURANCE** | * | |
| **COMPANY,** | * | |
| | * | |
| **Defendant.** | * | |

## COMPLAINT

Plaintiff B&D Maritime, Inc. brings this complaint against Defendant Markel American Insurance Company ("Markel"), and states as follows:

### Parties

1.      Plaintiff B&D Maritime is an Alabama corporation with its principal place of business in Baldwin County, Orange Beach, Alabama.

2.      Defendant Markel American Insurance Company ("Markel") is a Virginia corporation with its principal place of business in Glen Allen, Virginia.  Markel is registered to and does business in Alabama, including Baldwin County.

### Venue and Jurisdiction

3.      Venue is proper in Baldwin County under Ala. Code § 6-3-7.

4.      The Court has jurisdiction under Ala. Code § 12-11-30 and the Alabama Declaratory Judgment Act, Alabama Code § 6-6-220 *et seq.*

## Facts

5.      B&D Maritime owns and operates a marina in Orange Beach, Alabama.

6.      On June 1, 2015, B&D Maritime's predecessor in interest entered into a Marina Lease Agreement ("Lease Agreement") with Wallace Boat Rentals, LLC concerning the lease of one boat slip, one storage unit, and use of the marina water basin.[1]

7.      On November 3, 2015, B&D Maritime's predecessor in interest assigned its rights under the Lease Agreement to B&D Maritime via an Assignment Agreement.[2]

8.      The Lease Agreement states that Wallace Boat Rentals will maintain general liability insurance covering B&D Maritime as an additional insured.

9.      In the first half of 2022, Wallace Boat Rentals' customer, Kerrie A. Coe filed an action in the Circuit Court of Baldwin County entitled *Kerrie A. Coe v. Sanroc, LLC d/b/a Sanroc Cay Marina, LLC, et al.*, Civil Action Number 05-cv-2021-901257 alleging claims of negligence and wantonness against B&D Maritime and Wallace Boat Rentals (the "Lawsuit").[3]

10.     The Lawsuit arises from an alleged fall that occurred on June 2, 2021, while Coe was walking to a vessel that she and her husband had rented from Wallace Boat Rentals.

11.     Coe alleged that B&D Maritime and Wallace Boat Rentals were liable for her fall, based on an alleged failure to ensure the leased portion of the marina was safe for its customers.

12.     On June 2, 2021, the Lease Agreement was in effect between Wallace Boat Rentals and B&D Maritime.

---

[1] The Lease Agreement is attached hereto as Exhibit A.

[2] The Assignment Agreement is attached hereto as Exhibit B.

[3] A copy of the Complaint is attached as Exhibit C.

13.    On June 2, 2021, Wallace Boat Rentals was insured under a "Markel Tradesman Policy" issued by Markel, bearing policy number MTD00000418383 (the "Policy")[4]. The Policy provides, in part, as follows:

### WATERCRAFT LIABILITY

Coverage

> We will cover damages for **bodily injury** or **property damage** for which an insured becomes legally liable through ownership, maintenance, or use of the **insured vessel** arising from **declared usage.**

> A yacht club, marina or similar facility is an additional insured for **property damage** and **bodily injury,** for liability arising from the ownership, use and operation of the **insured vessel,** by an **insured.** A yacht club, marina, or similar facility will not be provided a separate defense.

14.    On August 30, 2022, B&D Maritime requested, through written correspondence, defense and indemnity under the Policy in relation to Coe's claims.

15.    On December 12, 2022, Markel issued a "Coverage Position Letter" in which it agreed to defend B&D Maritime in relation to Coe's claims as an additional insured under the Policy, although it would not provide a separate defense.

16.    On March 9, 2023, Markel issued a second "Coverage Position Letter" stating that it would no longer offer B&D Maritime any defense in relation to Coe's claims as an additional insured under the Policy.

17.    The reason Markel gave in its March 9, 2023 Coverage Position Letter for revoking its prior coverage position and agreement to defend B&D Maritime was that:

> The Policy states a marina is an "additional insured for property damage and bodily injury, for liability arising from the ownership, use and operation of the

---

[4]  A redacted copy of what B&D Maritime understands to be the Policy is attached hereto as Exhibit D.

3

insured vessel, by an insured." The allegations in the Second Amended
Complaint focus on B&D Maritime and/or Thomas' failure to repair, rebuild
and/or construct the marina in compliance with regulation, code, and law.
Further, the Second Amended Complaint states the cause of Coe's fall was a step
which was not properly marked, not the appropriate height/length, and lacked
proper and necessary safety railings, among other safety hazards and violations.
Additionally, Coe testified she fell from the upper to lower part of the marina. A
marina such as B&D Maritime is only an additional insured under the Policy for
liability arising from the ownership, use and operation of the insured vessel by an
Insured, i.e., Wallace. While it is confirmed Coe rented an insured vessel from
Wallace, there are no allegations of, or a determination of, liability for Coe's fall
arising from ownership, use, and operation of that that insured vessel. Rather, the
Second Amended Complaint and Coe's testimony focus on the construct of the
marina as the cause of Coe's fall and resulting injury. As such, B&D Maritime is
not an additional insured under the Policy. As B&D Maritime is not an additional
insured, no defense, whether the same or separate, is due B&D Maritime under
the Policy.

18.     Markel's coverage position is wrong. Coe's claims against B&D Maritime

concern liability arising from the ownership, use and operation of an insured vessel, by an

insured.

19.     Markel owes B&D Maritime defense and indemnity under the Policy in relation

to Coe's claims.

20.     Any such defense provided by Markel must be separate from the defense Markel

is providing Wallace Boat Rentals, because of the conflict of interest that would exist otherwise.

### Count I – Declaratory Judgment

21.     B&D Maritime adopts and incorporates by reference all preceding paragraphs as

if fully restated herein.

22.     An actual justiciable controversy has arisen between B&D Maritime and Markel,

as evidenced by the claims asserted by Coe against B&D Maritime and the coverage dispute

between B&D Maritime and Markel. Without limitation, these justiciable controversies include:

(a) whether Markel has a duty to defend B&D Maritime with respect to Coe's
claims;

4

       (b) whether B&D Maritime is entitled to a separate defense provided by Markel; and

       (c) whether Markel owes indemnity to B&D Maritime with respect to Coe's claims.

23.      Under the Alabama Declaratory Judgment Act, Alabama Code § 6-6-220 *et seq.*, B&D Maritime is entitled to a declaration of its rights, status, and other legal relations under the Policy in relation to Coe's claims.

WHEREFORE, premises considered, B&D Maritime requests the entry of a judgment against Markel declaring that:

       (a) Markel has a duty to defend B&D Maritime with respect to Coe's claims;

       (b) B&D Maritime is entitled to a separate defense provided by Markel;

       (c) Markel owes indemnity to B&D Maritime with respect to Coe's claims; and

B&D Maritime should also be awarded such other general and special relief as this Court deems appropriate. B&D Maritime also requests that pursuant to Ala. R. Civ. P. 57, the Court order a speedy hearing in this matter and advance it on the calendar.

### Count II – Breach of Contract—Defense and Indemnity

24.      B&D Maritime adopts and incorporates by reference all preceding paragraphs as if fully restated herein.

25.      Markel's denial of coverage and refusal to provide defense and indemnity to B&D Maritime under the Policy in relation to Coe's claims is a breach of its insurance contract.

26.      Markel owes defense and indemnity to B&D Maritime for Coe's claims.

27.      B&D Maritime has been damaged by Markel's breach of its insurance contract.

WHEREFORE, premises considered, B&D Maritime demands judgment against Markel

for indemnity against Coe's claims, for damages, interest, and costs of court, and for such other,

further, and different relief to which it may be entitled.

/s/ Norman M. Stockman
NORMAN M. STOCKMAN          (STO064)
Attorney for Plaintiff B&D Maritime, Inc.

OF COUNSEL:

HAND ARENDALL HARRISON SALE LLC
Post Office Box 123
Mobile, Alabama 36601
Tel:   (251) 432-5511
Email: nstockman@handfirm.com

**Serve Defendant by Certified Mail as follows:**

Markel American Insurance Company
c/o Corporation Service Company, Inc., as Agent for Service
641 South Lawrence Street
Montgomery, AL  36104

6

# EXHIBIT A

CIRCUIT COURT
BALDWIN COUNTY, AL
(FILED - BAY MINETTE)

JUL 2 6 2023

CIRCUIT CLERK

SanRoc Cay
2/267 Perdido Beach Blvd.
Orange Beach, AL 36561
251-981-5423

Commercial **X**
Personal ____

**Marina Lease Agreement**

Various

Slip # See attached page 1.5 at $ ▮▮▮ per Month
Storage Unit # B-13 + B-14 at $ ▮▮▮ per Month the two sheds currently occupying.
Electricity Metered per month

This Marina Lease Agreement (this "Lease") is made between SanRoc Cay Marina, L.L.C., an Alabama limited liability company (herein called "Marina"), and the undersigned Vessel Owner or Vessel Owner's Agent (herein called "Owner").

Marina hereby leases and lets to Owner for the vessel named in paragraph 1 of this Lease, and Owner hereby leases from Marina the slip number set forth above (the "Leased Slip") in the SanRoc Cay Marina and the storage unit, if any, set forth above (the "Leased Storage Unit"), subject to the terms and conditions as set forth herein.

1.   DESCRIPTION:   Owner represents and warrants the following to be true and correct:

| Owner Information | Vessel Information |
|---|---|
| Wallace Boat Rentals, LLC | |
| Name Michael Terrell | Name of Boat Various - See insurance form |
| Address ▮▮▮ | Length ____ Beam ____ Draft ____ LOA ____ |
| City ▮▮▮ | Manufacturer ____ Model ____ |
| State ▮▮ Zip ▮▮▮ | Year Mfg. ____ Color ____ Fuel Type ____ |
| Home ( ) Work (251) 981-5757 | Power or Sail ____ Holding Tank Yes / No |
| Cell ▮▮▮ Fax ( ) | Boat Ins. & # ____ Exp. Date ____ |
| E-mail ▮▮▮ | Documentation/Hull ID ____ |
| Emergency Contact ▮▮▮ | *Must provide copy of insurance policy to include* |
| Emergency Phone ▮▮▮ | $▮▮ *Combine Single limit (CSL) with* |
| | *SanRoc Cay named as "additional insured"* |
| DLN# ▮▮▮ State ▮▮▮ | Car Tag Number ____ State ____ |
| SS# ▮▮▮ FEIN# ▮▮▮ | Car Tag Number ____ State ____ |

**Credit / Debit Card Information**   Card Type ▮▮▮
Account Number ▮▮▮   Exp Date ▮▮▮

**I hereby authorize SanRoc Cay to Charge my credit or Debit card with my monthly Marina Fees**

Print name W. Michael Terrell   Signature W. Michael Terrell

**Slip Assignment Date** Feb 2015   **Expected Arrival Date** In possession

Electric Reading ____   Customer Number ____

4 yrs. 3 months.

2.   TERMS AND FEES:  This Lease is for a term of 75 months (the "Lease Term") beginning the 1st ____ day of June 20 15 .  The dockage fee shall be $ ▮▮▮ per month payable in advance with the first payment of $ ▮▮▮ being due on June 1, 2015 and with further payments (if monthly) being due on the first of each month during the Lease Term and late after the tenth of each month during the Lease Term. All other charges for goods or services at the Marina authorized by Owner or Owner's agent shall be additional amounts due under this Lease. ***This Lease will renew automatically unless Owner notifies the Marina in writing 30 days before the end of the Lease Term.*** ~~With 30 days written notice to Owner, Marina may increase dockage fee or terminate this Lease.~~   PLL   WMT

Initials WMT
PLL

# MARINA LESE AGREEMENT
## PAGE 1.5



**＊** SLIP #                COST

A 01

A 02

A 03

A 04

A WALL

B 17

B 18

B 19

TOTAL

＊ Slip assignments may be adjusted by owner to accomodate changes in condominium ownership. Any reassignment of slips will be along west pier.

3.     LIMITATION OF LIABILITY OF MARINA:   This Lease is for the use of Marina's water basin and to provide rental of a slip to berth the Vessel and a storage unit. The Leased Slip and the Leased Storage Unit shall be used at the sole risk of Owner as Marina shall not be liable for a loss of any kind to the Leased Slip, the Leased Storage Unit, the Vessel, or their contents, gear and equipment. Control of the Vessel shall remain Owner's responsibility at all times even if a key to the Vessel is left with the Marina. Inspection of docks and the berthed Vessel by Marina and any emergency aid to the Vessel shall be considered as an accommodation to Owner from which no duty arises. Marina has no responsibility to inspect mooring lines or to move Vessel from its respective slip and/ or hoist. Marina shall not have any liability for the interruption of utilities and/or the disconnection of the Vessel from the electrical power. Owner will require all contractors hired by Owner to accomplish work on Vessel to execute a "Contractors Agreement" with Marina and to comply with all insurance requirements contained therein prior to the commencement of any work and each individual employee of the contractor must sign a general release. Owner shall request and receive permission from Marina prior to commencing work on Vessel while on Marina premises or moored to Marina property. Marina does reserve the right to assign Owner any suitable space within Marina and to relocate the boat as may be necessary for whatever reason. Marina shall not be liable for any loss or damage caused by any act of God or by any criminal act. This is not a bailment contract, but is only a lease of marina slip and/or storage unit.

4.     LIEN OF MARINA: LATE FEES:   Marina shall have a lien against the Vessel, her appurtenances and contents for any unpaid sums due for use of dock facilities, storage or other services or other amounts due Marina, or for damage caused or contributed to or by the Vessel or Owner to any property of Marina or that of any other person at Marina. In the event the fees or other Marina charges are not paid within ten (10) days after the due date, a late fee of $20.00 will be charged. All balances over 30 days past due shall accrue interest at the rate of 18% per annum from the due date until paid in full. Boats will not be allowed to leave the Marina until all past due accounts for rent, work orders, fuel, storage fees, late fees, interest or other amounts due Marina are paid in full.

5.     DEFAULT:   Should Owner fail to pay any sums due Marina hereunder or otherwise, or violate any term or condition of this Lease or any Marina rules or regulations, or should Owner, Vessel, or Owner's leasehold interest pursuant to this Lease become the subject of a bankruptcy, receivership, seizure or repossession proceeding, Marina shall have the right, at its option, (1) to cancel and terminate this Lease and dispossess Owner of the Leased Slip and the Leased Storage Unit, including, but not limited to, removal of the Vessel from the Leased Slip at Owner's risk and expense: (2) to declare all amounts due under this Lease or otherwise for the remainder of the Lease Term to be immediately due and payable: (3) to take possession of the Vessel and appurtenances, if any, to hold the same as security for said payment plus any expenses which may reasonably be incurred by Marina in connection with the exercise of said right, including reasonable attorney's fees and expenses, and, if such default continues for a period of sixty (60) days, Marina may, at its option, sell the Vessel and appurtenances, if any, together with the contents of the same at public sale on the Marina premises, after giving notice in writing posted  at least thirty (30) days prior to such proposed sale giving notice of the time and place of such sale and notice to Owner at Owner's address as shown in this lease. Marina is expressly authorized by the Owner to make such sale upon such default and the giving of notice as provided herein and the purchaser at such sale shall be entitled to the Vessel, appurtenances, and contents. If the Vessel is sold as provided herein, the proceeds of such sale shall be applied first to the payment of all amounts accruing through the date of such sale and all costs incident thereto, including reasonable attorneys' fees and expenses, and the excess, if any shall be paid over to Owner on Owner's written demand. In the event of a deficiency of sale, and the proceeds will not pay such accrued amounts and costs, Owner shall continue to be liable to Marina for such Deficiency. Marina's remedies hereunder are cumulative and the election of any remedy shall not exclude any other remedy.

6.     INDEMINIFACTION AND RELEASE:   Owner shall indemnify, hold harmless and defend Marina,
Its employees, managers, members, agents, servants, representatives and affiliated entities from and against any and all injuries, losses, claims, lawsuits, actions, damages, liabilities and expenses (including, but not limited to, attorneys' fees and expenses) to persons or property arising from, related to or in connection with (a) the use, misuse or occupancy of, or ingress to or egress from, the Vessel, the Leased Slip, the Leased Storage Unit or Marina's common facilities by Owner or Owner's agents, contractors, licensees or invitees; (b) any loss or damage to the Vessel or the contents of the Vessel or the Leased Storage Unit; (c) any default in the performance of any obligation of Owner under this Lease, including, but not limited to, any rules and regulations of Marina promulgated from time to time by Marina; (d) any act or omission of Owner or Owner's agents, contractors, licensees or invitees; (e) enforcing this indemnity. Marina shall not be liable or responsible for, and Owner hereby releases Marina from, all liability or responsibility to Owner or any person claiming by, through or under Owner, by way of subrogation or otherwise, for any loss or damage to any property or injury to or death of any person, except if such loss, damage, injury or death is a direct result of Marina's sole negligence.

Initials _WM_

7.  SUBLEASING:  Owner shall not transfer, assign or sublease any interest in this lease, the Leased Slip, or the Leased Storage Unit referred to without the prior written consent of the Marina, which such consent may be withheld at the sole discretion or Marina for any reason. Any Purported transfer, assignment or subleasing of this Lease, the Leased Slip or the Leased Storage Unit without the prior written consent of Marina shall be default under this Lease.

8.  ACCEPTANCE OF VESSELS BY MARINA:  Only acceptable vessels in good condition shall be admitted to the Marina. Marina will, at the sole discretion of the Marina's Harbormaster, or his designated agent, accept only those vessels that are in safe, maintained and workable condition and meet such standards as set forth by Marina. The above, notwithstanding all maintenance of boats, is the responsibility of Owner. In the event it is necessary to move a boat at hours other than normal hours of operation, arrangements must be made with Marina within a reasonable time prior to each move, and an extra charge may be made for such services.

9.  STORAGE UNITS:  As available, Marina will provide a storage unit to Owner for the additional monthly fee set forth above. No storage boxes are allowed except as approved by Marina in writing. Termination of slip lease also terminates storage unit lease.

10.  STORMS-HIGH WINDS: If Marina, in its sole and absolute discretion, determines that any weather or other condition, including, but not limited to, storm, high wind or hurricane, makes it desirable to remove the Vessel from the Leased Slip, or change its mooring, Owner agrees to remove the Vessel from the Leased Slip or change its mooring, and, if Owner does not remove the Vessel from the Leased Slip, Marina, in its sole and absolute discretion, may, but is not obligated to, remove the Vessel from the Leased Slip at the sole risk and expense of the Owner. Owner hereby releases Marina from all liability or responsibility to Owner or any other person claiming by, through or under Owner, by way of subrogation or otherwise, and agrees to indemnify, hold harmless and defend Marina, for any loss or damage to any property or injury to or death of any person, irrespective of the cause of such loss or damage, arising from related to or in connection with any removal of, or change in the mooring of, the Vessel or any other vessel.

11.  INSURANCE:  Owner will keep in force at its expense as long as the Lease remains in effect and during such other time as the Vessel occupies the Leased Slip or Owner uses the Leased Storage Unit (a) general liability and property damage insurance in companies and in form and content acceptable to Marina with minimum limits of ███████████████████ on account of bodily injuries, death or property damage: (b) fire and extended coverage insurance in respect of the Leased Storage Unit and Marina's common facilities to the extent of one hundred percent (100%) of the full insurable value of the property covered and not less than the amount sufficient to avoid the effect of the co-insurance provisions of the applicable policy, and, (c) any other insurance required by law. Owner will further deposit the policy or policies of such insurance or certificates thereof with Marina. If the nature of Owners' operation is such as to place any or all of its employees under the coverage of local worker's compensation or similar statutes, Owner shall also keep in force, at its expense, so long as this Lease remains in effect and during such other times as the Vessel occupies the Leased Slip or Owner uses the Leased Storage Unit, worker's compensation or similar insurance affording statutory coverage and containing statutory limits. If Owner shall not comply with the covenants made in this section 11, Marina may cause insurance as aforesaid to be issued in Owner's name, and in such event Owner agrees to pay, as additional rent, the premium for such insurance upon Marina's demand. All such policies shall name Marina as an additional insured and loss payee and shall contain a provision whereby the same cannot be cancelled or modified unless Marina and any additional insured are given at least thirty (30) days prior written notice by certified or registered mail of such cancellation or modification. All general liability policies shall contain a provision that Marina, although named as an additional insured or loss payee, shall nevertheless be entitled to recovery under said policies for any loss occasioned to it by reason of the negligence of Owner, and that Marina shall be entitled to the benefits of such Insurance notwithstanding any willful act or other misconduct by Owner, or its agents or employees. Each liability insurance policy shall include a "cross liability" endorsement, providing coverage for claims brought by another insured under such policy. All public liability, property damage and other casualty insurance policies shall be written as not contributing with any coverage, which Marina may carry. Owner's insurance shall be primary and Marina's insurance, if any, shall be secondary.

12.  WAIVER OF SUBROGATION:  Owner hereby waives such cause of actions it may have or acquired against Marina which are occasioned by the negligence of Marina or its employees or agents resulting in the destruction of or damage to real or personal property belonging to Owner and located in or on the premises and which are caused by the hazards insured against in an extended coverage endorsement to a standard insurance policy approved for use in the State of Alabama. Owner further agrees to cause any insurance policy now owned or hereafter acquired covering the destruction or damage of such real property from the hazards covered by the aforementioned insurance policy and all endorsement thereto to include a waiver of subrogation or endorsement under which the insurance company waives the right of subrogation against Marina or any party to this agreement in case of destruction of or damage to the aforementioned real or personal property of any such party. If a waiver of subrogation is not available from the insurers of the Owner, this section 12 shall have no effect.

Initials _WMM_

PLL

13   CREDIT AND GUARANTY INFORMATION:   Owner shall provide Marina with the imprint of a current and valid credit card. Owner also authorizes the Marina the ri̶ 1̶ ̶ obtain a current credit report for the purpose ̶ 'granting credit to Owner and Owner agrees that Marina may obtain a credit report or reports from time to time during the term of the Lease.

Owner unconditionally guarantees the full, complete, and timely payment of all amounts now or hereafter owed by Owner to Marina and its successors and assigns. This Guaranty of Payment ("Guaranty") shall be unlimited in amount and the obligations of the undersigned under this Guaranty will not be released, terminated, or otherwise impaired as a result of: (i) any waiver, change, modification or amendment of any of the provision of any document delivered to Marina by Owner or to Owner by Marina; (ii) any extension of time granted by any party for the performance of any other party's obligations under any credit document; or (iii) any delay on the part of Marina in enforcing any right or remedy that Marina might have, and the undersigned hereby waives notice of all of the same. The undersigned further waives notice of acceptance of this Guaranty, notice of production or delivery of services to Owner and notice of any default by the Owner in performance of its obligations to Marina.

If the undersigned is a corporate entity, the undersigned officer of the guarantor hereby represents and warrants that he/she has read this Guaranty of Payment and has full authority to execute this document for and as the binding obligation of the guarantor for whom he/she is signing. As used herein, words in singular number include plural  as may be appropriate, and vice versa.

14.   DISCLAIMER OF WARRANTY: MARINA DOES NOT MAKE ANY WARRANTIES OR REPRESENTATIONS HEREUNDER OTHER THAN THOSE EXPRESSLY SET OUT HEREIN AND MARINA'S OBLIGATION TO THE OWNER SHALL BE LIMITED TO THE UNDERTAKING EXPRESSLY ASSUMED IN THIS LEASE.

15.   HOISTS:   The parties agree that Marina shall not be liable for accidents or damage arising from the use of boat hoists. Termination of slip lease also terminates hoist lease.

16.   UNUSED SLIPS: RELOCATION:   The parties agree that during times when the Leased Slip is not occupied by the Vessel, the Marina shall have the right without proration or adjustment in rent to temporarily berth vessels being repaired or stored by the Marina in the Leased Slip. In the event the Marina uses any utilities metered through the Owner's meter, Owner shall be credited the cost of the utilities used by the Marina. During special events that require access to scales or for any other reason, Owner agrees to relocate Vessel promptly upon request by Marina.

17.   RULES AND REGULATIONS:   Owner agrees to comply with all rules and regulations of the Marina promulgated from time to time by Marina as fully as though set forth in this Lease. A copy of the current rules and regulations are attached hereto and made a part hereof. A copy of the current rules and regulations may be posted on the Marina bulletin board from time to time. Owners are responsible for reviewing rules and regulations prior to each use of their boat for possible additions or changes thereto, Marina shall have no obligation to amend this lease for any rules or regulations changes.

18.   AUTHORITY:   The person signing below for the Owner represents that he or she is the Owner or authorized agent of the Owner and acknowledges, understands and agrees to all the terms and conditions set forth hereinabove and the rules and regulations of the Marina.

IN WITNESS WHEREOF, we have hereunto set our hands and seals on the _24th_ day of _June_, 20 _15_.

Owner/Owner's Agent                                SanRoc Cay Marina, L.L.C.

_W. Michael Terrell_
Print Name                                         By: _Patti Fish_

_W Michael Terrell_
Signature                                          Title _General Manager_

Initials _WMT_

_PL_

# EXHIBIT B

## ASSIGNMENT OF LEASE AGREEMENT
## TO B&D MARITIME, INC.

WHEREAS SanRoc, LLC had several lease agreements with third party individuals/entities, whereby SanRoc, LLC agreed to lease commercial space and boat slips within the SanRoc Cay Marina complex located at 27267 Perdido Beach Blvd., Orange Beach, Alabama to lessees and said lessees agreed to pay rent to SanRoc, LLC for their space on said premises;

WHEREAS SanRoc, LLC assigned said lease agreements to Brickwork Investment Company, Inc. by and through the Master Assignment of Lease Agreements entered into on June 30, 2015 (hereinafter the "Master Assignment to Brickwork");

WHEREAS the Master Assignment to Brickwork included, among others leases, the marina boat slip leases (collectively attached hereto as Appendix I) (hereinafter referred to as the "Attached Subject Lease Agreements");

WHEREAS Brickwork Investment Company, Inc. has entered into an agreement to sell the condominium units that correspond with the Attached Subject Lease Agreement to B&D Maritime, Inc.;

WHEREAS B&D Maritime, Inc. wishes to continue leasing the unit to the lessee under the same terms set forth in the Attached Subject Lease Agreements;

THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby acknowledged, Brickwork Investment Company, Inc. does hereby convey, assign, and transfer all of its interest under the Attached Subject Lease Agreements (Appendix I) to B&D Maritime, Inc.;

AND WHEREAS B&D Maritime, Inc. does hereby accept and consent to said transfer and expressly assumes all rights, benefits, liabilities and obligations arising from said interest, either past, present or future.

IN WITNESS WHEREOF, Brickwork Investment Company, Inc. and B&D Maritime, Inc. hereby set their hands and seals this the ____ day of _____, 2015.

Brickwork Investment Company, Inc.

By: Mark D. Ryan
Its:  President

STATE OF ALABAMA

BALDWIN COUNTY

    I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Mark D. Ryan, whose name as President of Brickwork Investment Company, Inc., is signed to the foregoing Assignment, and who is known to me, acknowledged before me on this day that he, as such President, being informed of the contents of the said Assignment, executed the same voluntarily for and as the act of said company on the day the same bears date.

    Given under my hand and seal hereto affixed by me on this the ____ day of _____, 2015.

NOTARY PUBLIC
My Commission Expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 22, 2015
BONDED THRU NOTARY PUBLIC UNDERWRITERS

B&D Maritime, Inc.

By: Randy Boggs
Its:  President

STATE OF ALABAMA

BALDWIN COUNTY

    I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Randy Boggs, whose name as President of B&D Maritime, Inc., is signed to the foregoing Assignment, and who is known to me, acknowledged before me on this day that, as such President, being informed of the contents of the said Assignment, he executed the same voluntarily for and as the act of said Company on the day the same bears date.

    Given under my hand and seal hereto affixed by me on this the 3rd day of _November_, 2015.

NOTARY PUBLIC

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 22, 2015
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My Commission Expires:

# EXHIBIT C



ELECTRONICALLY FILED
8/29/2022 5:24 PM
05-CV-2021-901257.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
BRENDA Q. GANEY, CLERK

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | |
|---|---|
| **KERRIE A. COE;** * | |
| * | |
| **Plaintiff,** * | |
| * | |
| **v.** * | |
| * | **CIVIL ACTION NO.** |
| **WALLACE BOAT RENTALS, LLC; B &** * | **CV-2021-901257** |
| **D MARITIME, INC., M.D. THOMAS** * | |
| **CONSTRUCTION, LLC and Defendants B** * | |
| **and C, being the persons, firms,** * | |
| **corporations, associates, partnerships, or** * | |
| **other entities responsible for the harms and** * | |
| **losses of the Plaintiff; all of whose names** * | |
| **and true legal identities are otherwise** * | |
| **unknown at this time but who will be added** * | |
| **by amendment when ascertained, jointly** * | |
| **and severally;** * | |
| * | |
| **Defendants.** * | |

### SECOND AMENDED COMPLAINT

Plaintiff amends her Complaint showing she is entitled to relief as follows:

1.    Plaintiff KERRIE A. COE ("Coe") is an adult person.

2.    WALLACE BOAT RENTALS, LLC ("Wallace") is an Alabama limited liability company doing business in this State.

3.    Defendant B & D MARITIME, INC. ("B & D Maritime") is an Alabama corporation doing business in this State. Defendant B & D Maritime is substituted for fictitiously plead Defendant A.

4.    Defendant M.D. THOMAS CONSTRUCTION, LLC ("MDTC") is an Alabama limited liability company doing business in this State.

5.    Defendants B and C, whether singular or plural, are those persons, firms, corporations, associates, partnerships, or other entities whose wrongful conduct caused or

contributed to Plaintiff's injuries; all of whose names and true legal identities are otherwise unknown at this time but who will be added by amendment when ascertained, jointly and severally.

6.       Defendant B & D Maritime owns a marina with associated docks and piers located at 27267 Perdido Beach Blvd – Unit E, Orange Beach, Alabama 36561.

7.       Upon information and belief, the marina with associated docks, piers, walkways, and stairs (for ease of reference, the entirety of the marina is simply referred to as "marina" henceforth) was destroyed and/or damaged by Hurricane Sally. Defendant B & D Maritime hired Defendant MDTC to repair, rebuild, and/or construct the current marina. Defendants B & D Maritime and/or MDTC did not repair, rebuild, and/or construct the marina in compliance with applicable regulations and codes, and Alabama law.

8.       Defendant B & D Maritime leases the marina to Defendant Wallace. Defendant Wallace operates a boat rental company from the marina. In violation of Alabama law, Defendant Wallace failed to ensure the marina it had leased was safe for use by its customers.

9.       On June 2, 2021, Plaintiff Coe's family had rented a boat from Defendant Wallace that was docked at the subject marina. While Plaintiff Coe was stepping down from the top level of the marina's dock to the lower level, she fell. The step on which she fell was not properly marked, not the appropriate height/length, and lacked proper and necessary safety railings, among other safety hazards and violations.

10.      As a direct and proximate consequence of Defendants' tortious conduct, Mrs. Coe suffered severe personal and bodily injuries. Mrs. Coe broke both of her legs as a result of the fall. She suffered pain, anguish, and mental suffering; still so suffers, and will suffer in the future. She incurred medical bills and damages and will incur additional bills in the future. She incurred lost

2

wages and was temporarily disabled. She has suffered and incurred other additional damages as well.

## FIRST CAUSE OF ACTION

11.     Plaintiff adopts the allegations contained in the preceding paragraphs herein.

12.     As a result of Defendants' negligence, Plaintiff suffered injuries as aforesaid.

WHEREFORE, the above premises considered, Plaintiff demands judgment against Defendants jointly and severally, for compensatory damages and costs of this action, plus interest.

## SECOND CAUSE OF ACTION

13.     Plaintiff adopts the allegations contained in the preceding paragraphs herein.

14.     As a result of Defendants' wantonness, Plaintiff suffered injuries as aforesaid.

WHEREFORE, the above premises considered, Plaintiff demands judgment of and from Defendants jointly and severally, for actual and punitive damages in an amount to be determined at trial, plus interest as allowed by law, and costs.


Respectfully submitted,

*/s/ Jack Smalley III*
JACK SMALLEY III                    (SMA014)
*Attorney for Plaintiff*

LONG & LONG, PC
3600 Springhill Memorial Drive N
Mobile, Alabama 36608
T: (251) 445-6000
F: (251) 445-0282
Trip@longandlong.com

DOCUMENT 6

**ADDITIONAL DEFENDANT TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

**M.D. THOMAS CONSTRUCTION, LLC**
c/o Laura Thomas (Registered Agent)
4401 Money Bayou Drive
Orange Beach, Alabama 36561

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of August, 2022, a copy of the foregoing has been electronically filed with the Clerk of the Court using the AlaFile e-filing system, which will send notification of such filing to the following:

Mark D. Ryan, Esq.
Samuel K. Wilkes, Esq.
Ryan & Wilkes, P.C.
P.O. Box 528
Orange Beach, AL 36561
*Attorneys for Defendant, Wallace Boat Rentals, LLC*

Allen E. Graham, Esq.
E. Barrett Hails, Esq.
Phelps Dunbar, LLP
101 Dauphin Street, Suite 1000
Mobile, AL 36602
*Attorneys for Defendant, B&D Maritime, Inc.*

/s/ Jack Smalley III
JACK SMALLEY III

**DISCOVERY TO BE SERVED WITH THE SECOND AMENDED COMPLAINT**

4

# EXHIBIT D



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT DECLARATIONS PAGE

Page # 5

| Policy Number:<br>MTD00000418383 | Agency Number:<br>10336 - 971249 | Effective Date/Transaction:<br>2021-08-04          Endorse |
|---|---|---|

**Policy Period: From** 02/06/2021 **To** 02/06/2022 **12:01 A.M. Standard Time at Your Mailing Address**

| Insured Name and Mailing Address<br>WALLACE BOAT RENTALS LLC<br>WILLIAM M TERRELL | Your Agent  305-743-7711<br>OFFSHORE RISK MANAGEMENT<br>807 FORREST AVE<br><br>COCOA, FL 32922 |
|---|---|

**DECLARED USAGE**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**       SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE A

**Hull Type** Pontoon/Tritoon                    **# of Vessels**  10

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None                          **From**              **To**

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $▮▮▮ per occurrence | $▮▮▮ | $▮▮▮ |

***If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels. See Vessel Schedule for the individual vessel limits and deductible amounts.**

Endorsement
Premium Total $▮▮▮                                        Usage Premium  $▮▮▮

**Seasonal Rating:** More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium $▮▮▮ | Policy Taxes/Fees $▮▮▮ | TOTAL ANNUAL PREMIUM  $▮▮▮ |
|---|---|---|

Amend Schedule
REMOVE 2 PONTOONS & PWC

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**    Please see the back of this form.

**Signed on**   8/9/2021    **at** COCOA, FL

Insured                          8 9 2021

MTD5000-0218

WALLACE_000001



# MARKEL AMERICAN INSURANCE COMPANY

## WATERCRAFT DECLARATIONS PAGE

| Policy Number: | Primary Usage and ID | Agency Number: | Page Number |
|---|---|---|---|
| MTD00000418383 | Rental 2 | 10336 - 971249 | 6 |

MTD5001-0215 - The Markel Tradesman Policy
MTD5018-0215 - Rental Usage Endorsement
MTD5124-0215 - Policy Change Endorsement
MTD5200-0317 - General Amendatory Endorsement
MIL1214-0917 - Trade or Economic Sanctions Endorsement

MTD5000-0218

8/9 2021



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT SCHEDULE PAGE

Page # 7

| Policy Number:<br>MTD00000418383 | Agency Number:<br>10336 - 971249 | Effective Date/Transaction:<br>2021-08-04     Endorse |
|---|---|---|

**Policy Period: From** 02/06/2021 **To** 02/06/2022 **12:01 A.M. Standard Time at Your Mailing Address**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description** SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE A

**Hull Type** Pontoon/Tritoon          **# of Vessels** 10

**Mooring Location** 27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits** Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up** None                    **From**          **To**

MTD5000-0218 Page # 7                                              Rental 2

## INDIVIDUAL VESSEL INFORMATION

| | | Manufacturer | HIN # | Limit | Deductible | | |
|---|---|---|---|---|---|---|---|
| | | SOLID | ██████ | n/a | n/a | | |
| | | SOLID | ██████ | n/a | n/a | | |
| | | SOLID | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |
| | | BENTLEY | ██████ | n/a | n/a | | |

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## POLICY CHANGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

| | |
|---|---|
| **Usage ID** | Rental - 2 |
| **Policy Change Description** | RENTAL LOCATIONS: SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL 36561 |
| | 27194 MARINA RD, ORANGE BEACH, AL 36561 |

All other terms, conditions, and limitations of the policy remain unchanged.

WALLACE_000004



3/7/2018


WALLACE BOAT RENTALS LLC




Hi WILLIAM:

Thank you for putting your trust in Markel, we are pleased you chose us to protect your business.

It is important that you review the enclosed policy documents to make sure everything is correct.  If you believe any changes are required, or if you need additional help, please call your agent reflected on the Declarations Page.

If you'd like to make a payment by phone, please call your agent.  To make a payment online, please visit **markelamerican.com/pay**.


Sincerely,
**Markel**
Specialty Insurance by Real Specialists



MTD00000418383
MTDNEW-0117
Page 1 of 2

WALLACE_000005

# PRIVACY POLICY AND OFAC NOTICE

We would like to thank you for your business and let you know we respect your privacy.  We are committed to protecting your personal information.  Please read this notice, which outlines our privacy policies and practices.

We collect nonpublic information about you from the following sources:
- Information we receive from you on applications or other forms such as your name and address;
- Information about your transactions with us, our affiliates, or others;
- Information we receive from a consumer reporting agency.

**We do not disclose any nonpublic information about our customers or former customers to anyone, except as permitted by law.**

We may disclose nonpublic personal information about you to the following types of third parties:
- Insurance agents and/or brokers that you have chosen to work with;
- Non-affiliated third parties as permitted by law to provide services you have requested.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:
- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

WALLACE_000006



# MARKEL AMERICAN INSURANCE COMPANY

## POLICYHOLDER NOTICE

By being a valued customer, in the near future, you will be receiving essential information to assist your loss prevention plan. You never know when a loss may occur, it is important to review and act on the information promptly to minimize risk and adverse consequences of an accident.

What you will be receiving:

- Newsletter outlining important information to minimize risk to your business.

- Warning disclosure stickers and signage for your boats.

If a policy charge was made for a site inspection, a third party vendor, Technical Insurance Services, will be in contact to arrange for a site inspection and review your operation.

Thank you for placing your rental business insurance with us.



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT DECLARATIONS PAGE

Page # 4

| Policy Number:<br>MTD00000418383 | Agency Number:<br>10336 - 971249 | Effective Date/Transaction:<br>2018-02-06    New |
|---|---|---|

| Policy Period: From  02/06/2018    To 02/06/2019  12:01 A.M. Standard Time at Your Mailing Address |
|---|

| Insured Name and Mailing Address<br>WALLACE BOAT RENTALS LLC<br>WILLIAM M TERRELL | Your Agent  305-743-7711<br>OFFSHORE RISK MANAGEMENT<br>807 FORREST AVE<br><br>COCOA, FL 32922 |
|---|---|

**DECLARED USAGE**

**Primary Usage and ID** Rental 1

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**    SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

| Hull Type PWC | # of Vessels  9 |
|---|---|

**Mooring Location**   27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**   Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None                              **From**              **To**

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $▮▮▮ per occurrence | $▮▮▮ | $▮▮▮ |

*If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels.  See Vessel Schedule for the individual vessel limits and deductible amounts.

| | Endorsement<br>Premium Total $▮▮▮ | Usage Premium  $▮▮▮ |
|---|---|---|

Seasonal Rating: More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium $▮▮▮ | Policy Taxes/Fees $▮▮▮ | TOTAL ANNUAL PREMIUM  $▮▮▮ |
|---|---|---|

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**
MTD5001-0215, MTD5018-0215, MTD5124-0215, MTD5200-0317

| Signed on    3/7/2018    at  COCOA, FL |  |
|---|---|
|  | *Insured*  1/7 2018 |

MTD5000-0215

WALLACE_000008

# MARKEL AMERICAN INSURANCE COMPANY

GLEN ALLEN, VIRGINIA

## WATERCRAFT SCHEDULE PAGE

Page # 5

| Policy Number: MTD00000418383 | Agency Number: 10336 - 971249 | Effective Date/Transaction: 2018-02-06 New |
|---|---|---|

**Policy Period: From** 02/06/2018 **To** 02/06/2019 **12:01 A.M. Standard Time at Your Mailing Address**

**Primary Usage and ID** Rental 1

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description** SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

**Hull Type** PWC **# of Vessels** 9

**Mooring Location** 27267 PERDIDO BEACH BLVD Orange Beach Baldwin AL 36561

**Navigation Limits** Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up** None **From** **To**

MTD5000-0215 Page # 5 Rental 1

**INDIVIDUAL VESSEL INFORMATION**

| | | Manufacturer | HIN # | Limit | Deductible | | |
|---|---|---|---|---|---|---|---|
| | | YAMAHA | | n a | | | |
| | | YAMAHA | | n/a | | | |
| | | YAMAHA | | n a | | | |
| | | YAMAHA | | n a | | | |
| | | YAMAHA | | n/a | | | |
| | | YAMAHA | | n a | | | |
| | | YAMAHA | | n/a | | | |
| | | YAMAHA | | n a | | | |
| | | YAMAHA | | n/a | | | |



# MARKEL AMERICAN INSURANCE COMPANY

## GLEN ALLEN, VIRGINIA

### WATERCRAFT DECLARATIONS PAGE

Page # 6

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MTD00000418383 | 10336 - 971249 | 2018-02-06   New |

**Policy Period:  From  02/06/2018    To  02/06/2019  12:01 A.M. Standard Time at Your Mailing Address**

| Insured Name and Mailing Address | Your Agent  305-743-7711 |
|---|---|
| WALLACE BOAT RENTALS LLC<br>WILLIAM  M TERRELL<br>████████  ████████ | OFFSHORE RISK MANAGEMENT<br>807 FORREST AVE<br><br>COCOA, FL 32922 |

**DECLARED USAGE**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**      SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

| Hull Type Pontoon/Triton | # of Vessels  7 |
|---|---|

**Mooring Location**  27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**  Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up**  None        From          To

| COVERAGE | LIMIT* | DEDUCTIBLE* | PREMIUM |
|---|---|---|---|
| Watercraft Liability | $████ per occurrence | $████ | $████ |

*If Hull Coverage is shown above, the Hull Limit is the total value for all insured vessels.  See Vessel Schedule for the individual vessel limits and deductible amounts.

| Endorsement Premium Total $████ | Usage Premium $████ |
|---|---|

Seasonal Rating: More premium will be charged for the months that make up the boating season, peaking during the summer, and less premium will be charged for the months during the offseason. If the policy is cancelled for any reason, including for nonpayment of premium, any return premium will be based on the length of time the policy was in force and reflect the variance in premium associated with the months the policy was in force. Minimum earned premium applies only when you cancel the policy.

| Minimum Earned Premium $████ | Policy Taxes/Fees $████ | TOTAL ANNUAL PREMIUM $████ |
|---|---|---|

| Producer  OFFSHORE RISK MANAGEMENT | Customer Ref# |
|---|---|

**Forms and Endorsements**
MTD5001-0215, MTD5018-0215, MTD5124-0215, MTD5200-0317

| Signed on   3/7/2018 | at COCOA, FL | *Laura L. ___* |
|---|---|---|
| | | Insured    1/7/2018 |

MTD5000-0215

WALLACE_000010



# MARKEL AMERICAN INSURANCE COMPANY

### GLEN ALLEN, VIRGINIA

| WATERCRAFT SCHEDULE PAGE |
|---|

Page # 7

| Policy Number: | Agency Number: | Effective Date/Transaction: |
|---|---|---|
| MTD00000418383 | 10336 - 971249 | 2018-02-06    New |

**Policy Period: From 02/06/2018    To 02/06/2019  12:01 A.M. Standard Time at Your Mailing Address**

**Primary Usage and ID** Rental 2

**Usage Type** Onsite only, no offsite delivery permitted by insured or tow away by renter

**Additional Usage Description**    SHIFTING OF UNITS IS ALLOWED BETWEEN RENTAL LOCATIONS LISTED ON THE AT

| Hull Type Pontoon/Tritoon | # of Vessels   7 |
|---|---|

**Mooring Location**   27267 PERDIDO BEACH BLVD  Orange Beach Baldwin AL 36561

**Navigation Limits**   Inland waters of AL, GA, LA, MS, NC, SC & TX.

**Lay-Up** None                      **From**          **To**

---

MTD5000-0215 Page # 7                                                                 Rental 2

| INDIVIDUAL VESSEL INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Manufacturer | HIN # | Limit | Deductible | | |
| | | BEACH CAT | ███████ | n/a | | | |
| | | HARRIS MFG/FLOTE-BOTE | ███████ | n/a | | | |
| | | HARRIS MFG/FLOTE-BOTE | ███████ | n/a | | | |
| | | BENTLEY | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |
| | | SOLID | ███████ | n/a | | | |

WALLACE_000011

 **MARKEL AMERICAN INSURANCE COMPANY**

## CONSUMER NOTICE OF INSURANCE SCORING

To offer an accurate quote in connection with this application for insurance, we will review the unit owner's credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of the unit owner's insurance score. Future reports may be used to update or renew insurance.

MAM5120-0407

Page 1 of 1

WALLACE_000012



MARKEL AMERICAN INSURANCE COMPANY

# THE MARKEL TRADESMAN POLICY

WALLACE_000013

TABLE OF CONTENTS

**THE MARKEL TRADESMAN POLICY**

READ YOUR POLICY CAREFULLY.

**Beginning on Page**

**INSURING AGREEMENT** ............................................................. 1

**DEFINITIONS** ....................................................................... 1

**WARRANTIES & CONDITIONS** ................................................. 2

**GENERAL EXCLUSIONS** ........................................................ 5

**PHYSICAL DAMAGE** ............................................................. 6

**WATERCRAFT LIABILITY** ...................................................... 7

**OIL POLLUTION LIABILITY** .................................................... 9

WALLACE_000014

## INSURING AGREEMENT

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages as shown on the Declarations Page and any schedules, which are part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page, any schedule and any application are your agreements and representations. This policy is issued in reliance upon the truth of your representations during the application process and it includes all agreements existing between you and us or any of our representatives.

## DEFINITIONS

Throughout this policy, most words and phrases that have special meanings appear in **bold**. Only the pronouns "we", "our", "us", "you", "your", and "yours" are defined, but do not appear in **bold**. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined in the sections they appear.

1.  You and your mean the person(s) or organization(s) named on the Declarations Page as the 'Insured'.

2.  We, our and us refer to the company, shown on the Declarations Page, which is providing this insurance.

3.  **Actual cash value** means the **replacement cost** of the lost or damaged property less depreciation.

4.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

5.  **Constructive total loss** means that the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

6.  **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a watercraft.

7.  **Declared usage** means activities or operations essential to the type of business shown on the Declarations Page or Schedule Page as 'Declared Usage'.

8.  **Design defect** means a flaw in the structural plan of the **insured vessel's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

9.  **First named insured** means the named 'Insured' listed first on the Declarations Page.

10. **Insured vessel** means:
    a.  the vessel as shown on the Declarations Page or Schedule Page, including its spars, sails, rigging, tackle, fittings, machinery and equipment necessary for the safe operation and maintenance of the vessel; or
    b.  a **newly acquired vessel**.

11. **Latent defect** means a flaw in the material of the **insured vessel's** hull or machinery existing when the **insured vessel** or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects, or design defects**.

12. **Manufacturer's defect** means the improper, incorrect or inadequate manufacturing process of the **insured vessel's** hull or machinery or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **latent defects**, or **design defects**.

WALLACE_000015

13. **Newly acquired vessel** means a vessel that you acquire during the policy period that replaces an **insured vessel** shown on the Declarations Page or Schedule Page, which is similar to the **insured vessel(s)** described on the Declarations Page or Schedule Page. A **newly acquired vessel** also includes an additionally acquired vessel, which is similar to the **insured vessel(s)** described on the Declarations Page or Schedule Page that does not replace a vessel described on the Declarations Page or Schedule Page, provided we insure all other vessels that you own. The **newly acquired vessel** must exclusively be used for the **declared usage**. No coverage exists under any circumstance for vessels that are not similar to an **insured vessel** shown on the Declarations Page or Schedule Page, or is determined by us to be in an unseaworthy condition.

If we determine the new vessel to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new vessel from the date you purchased the vessel, provided that you have notified us within 30 days following delivery and pay any additional premium required.

A **newly acquired vessel** will have the same coverage we provide for vessels on the Declarations Page or Schedule Page with the same **declared usage**. The limit of insurance applicable to any **newly acquired vessel** for Hull Coverage will be the lesser of its **actual cash value** or your purchase price, but not more than 150% of the highest value shown on the Declarations Page or Schedule Page for one vessel.

14. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

15. **Property damage** means damage to tangible property.

16. **Seaworthy** means fit for the **insured vessel's** intended purpose. Seaworthy means the **insured vessel** and its equipment is well maintained and in good repair so that it cannot be damaged by ordinary weather or water conditions or the rigors of normal use. Seaworthy applies not only to the physical condition of the **insured vessel**, but to all its parts, equipment and gear, it also includes assignment of a suitable captain or crew.

17. **Windstorm** means tropical depressions, tropical storms or hurricanes as designated by the National Weather Service and/or National Hurricane Center.

## WARRANTIES & CONDITIONS

1. Seaworthiness Warranties
   You warrant to us the following:
   a. It is warranted that the **insured vessel** is **seaworthy** at the inception of this insuring agreement. Violation of this warranty voids this insuring agreement from its inception.
   b. It is warranted that the **insured vessel** shall be maintained in a **seaworthy** condition during the entire policy period. Violation of this warranty to maintain the **insured vessel** in a **seaworthy** condition will render coverage void for any damage or loss claimed under this policy where such condition or conditions of unseaworthiness directly or indirectly caused or contributed to any damage or loss for which you make a claim.

2. Conditions
   If you violate any of the following conditions, coverage will be suspended until you are no longer in violation:
   a. The **insured vessel** is to be used only for the **declared usage**.
   b. You possess all required federal, state and local permits and licenses for the **declared usage**.
   c. The maximum number of passengers aboard the **insured vessel** shall not exceed the lesser of:
      i. The limit for passengers or weight by the manufacturer;
      ii. The limit for passengers or weight by the Coast Guard or other legal entity with controlling authority; or
      iii. The limit for passengers as shown on the Schedule Page.
   d. While any captain or crew is under the influence of alcohol in excess of the legal amount defined by the laws of the state where this policy was delivered.
   e. While any captain or crew has consumed or is under the influence of marijuana in any amount, any illegal drug in any amount, or any prescription drug (other than marijuana) in excess of the amount prescribed to the captain or crew by a licensed physician or where a warning exists which indicates that the substance could impair physical or cognitive ability.

WALLACE_000016

    f. The **insured vessel** may not be transported overland outside of the Continental United States. While being towed overland on a trailer, the combined weight of the **insured vessel**, trailer and any equipment may not exceed the towing capacity as provided by the manufacturer of the towing vehicle. If the **insured vessel** is being transported by contract or common carrier, the contract or common carrier must be licensed and must provide a certificate of insurance covering the **insured vessel**. This policy is then excess to the coverage provided by the licensed contract or common carrier.

    g. If 'Lay-Up' is shown on the Declarations Page or Schedule Page, during the lay-up period shown:

        i. If the Declarations Page or Schedule Page indicates that lay-up is afloat, then the **insured vessel** must be in a safe berth for storage and the **insured vessel** may not be operated except as required to change berths within the immediate berthing location. However, if you are required to move the **insured vessel** for the purpose of safety, repairs, and alterations or for betterments and improvements, coverage will not be suspended.

        ii. If the Declarations Page or Schedule Page indicates that lay-up is ashore, then the **insured vessel** may not be afloat.

        iii. If the Declarations Page or Schedule Page indicates that lay-up is on a lift, then the **insured vessel** is warranted to be winterized and out of commission on a lift or ashore.

3. Policy Period/Territory
This policy applies only to loss which occurs during the policy period as shown on the Declarations Page or Schedule Page, and:

    a. on land within the United States of America and Canada; or

    b. on land or water within the 'Navigation Limits' shown on the Declarations Page or Schedule Page.

4. Misrepresentation or Fraud
All insurance provided by this policy shall be null and void if you, at any time, including renewal(s), either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. Any and all changes in any fact(s) or circumstance(s) material to our acceptance of this risk arising during the term of this policy and/or any renewal(s) must be disclosed to us as soon as possible, and any failure to make such disclosure during the term of the policy shall also render this policy null and void. No action or inaction by us shall be deemed a waiver of this provision.

5. Notice of Cancellation
You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled.

We may cancel this policy by delivering or mailing notice of cancellation to the **first named insured** at the last address shown in our records at least:

    a. ten (10) days before the cancellation takes effect if:

        i. the cancellation is for nonpayment of premium; or

        ii. this policy has been in effect for less than sixty (60) days and is not a renewal policy.

    b. thirty (30) days before the cancellation takes effect in all other cases.

After this policy has been in effect for sixty (60) days, or if this is a renewal policy, we will cancel only:

    a. for nonpayment of premium due;

    b. for misrepresentation or fraud;

    c. for substantial breach of your duties under this policy;

    d. if the risk changed substantially since the policy was issued; or

    e. for failure to comply with our underwriting requirements within sixty (60 days) of the term effective date.

Proof of mailing of this notice to the **first named insured** will be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice will become the end of the policy period.

This policy will terminate without any written notice when we pay for a total loss or a **constructive total loss**.

6. Conformity to Statute
This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law will apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

7. Policy Changes
No change or waiver may be effected in this policy except by endorsement issued by us. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

When we broaden coverage during the policy period, without charge, the policy will automatically provide the broadened coverage.

8. Legal Action Against Us
   a. No suit or action may be brought against us unless there has been full compliance with all terms of this policy.
   b. With respect to coverage provided under **PHYSICAL DAMAGE**, no suit or action may be brought against us unless the action is brought within 12 months after the date you first have knowledge of the loss.
   c. With respect to all other coverage under this policy, no suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.
   d. Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

9. No Benefits to Others
No person or organization which has custody of the **insured vessel**, and is not an **insured**, will benefit from this insurance.

10. Transfer of Interest
All coverage will cease without further notice to you or to your representative(s) in the event of any sale, transfer, mortgage, pledge, change in legal interest or ownership over the:
   a. **insured vessel**;
   b. policy; or
   c. the legal entity or organization named as the 'Insured' in the policy.

If the **insured** is an individual, in the event of your death, this policy will remain in effect until the end of the policy period for:
   a. persons covered under this policy at the time of your death;
   b. your legal representative while acting within the scope of duties of a legal representative; or
   c. any person having proper custody of the **insured vessel** until a legal representative is appointed.

11. Right of Recovery
You may have the right to recover from another party who is responsible for your loss. If we pay your loss under this policy, this right of recovery will belong to us up to the amount that we have paid you. If you, or anyone acting on your behalf, take any action that impairs our right to recover, we may consider this policy void and without effect as to such loss. However, signing written contracts for storage or slip rental that include a waiver of subrogation provision will not void this policy.

12. Claim or Suit Against You
You must immediately notify us and send us every demand notice, summons or other legal papers received by you or your representative, if a claim is made or a suit is brought against you for liability that is covered under this policy. We will pay the ensuing cost of the suit and have the sole right to control the defense of the suit. We also have the option of naming attorneys to represent you in the suit.

13. General Duties Following a Loss
In the event of any loss which may be covered by this Policy, you or any 'Loss Payee' making a claim must:
   a. Give us immediate notice of any accident, loss, damage, or expense that may be covered under this policy. The notice should state with respect to the incident:

    i.  where, when and how it occurred;
    ii.  the property concerned;
    iii.  the extent of injuries or damages involved; and
    iv.  names and addresses of injured or damaged parties and all witnesses.
  b.  Not assume any obligation, admit any liability or incur any expense for which we may be liable without our written permission.
  c.  Immediately notify the authorities of any theft, vandalism or malicious damage to your insured property, if any injury is involved, or if required by law.
  d.  As often as we may reasonably require:
    i.  permit us to inspect all damages before repairs are made;
    ii.  submit and subscribe to examinations under oath by any person named by us. If more than one person is examined, we have the right to examine and receive statements separately from each person and not in the presence of the others;
    iii.  produce for examination and permit extracts and copies of all books of account, bills, invoices, other vouchers and any other tangible items related to the claimed loss, or certified copies thereof if the originals are lost, at such reasonable time and place as may be designated by us or our representative.

Any person presenting a claim for **bodily injury** must:
  a.  submit to our requests for physical examinations by physicians of our choice. We will pay for the costs of the examinations;
  b.  permit us to obtain pertinent copies of medical reports and records for any medical condition which is or is not related to the **bodily injury** for which a claim is made;
  c.  provide us with a written release to obtain copies of medical reports and records for any medical condition which is or is not related to the **bodily injury** for which a claim is made.

If you do not comply with these general duties, then no coverage for the loss will be provided.

14. Other Insurance
This policy is excess over any other valid and collectible insurance.

15. Nonrenewal
If we decide not to renew your policy, we or our authorized representative will mail to the **first named insured**, at the address shown on the Declarations Page, written notice of nonrenewal. The written notice will be mailed to the **first named insured** at least thirty (30) days before the end of the policy term. A copy of the notice will also be sent to any 'Loss Payee' as shown on the Declarations Page or Schedule Page. If we decide not to renew your policy, our mailing of notice to the address of the **first named insured** shown on the Declarations Page will constitute proof of notice as of the date we mail it.

## GENERAL EXCLUSIONS

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

1.  Extended Radioactive Contamination
  a.  ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
  b.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
  c.  any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;
  d.  the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purpose.

However, if while the **insured vessel** is within the policy territory, a fire arises directly or indirectly from one or more of the above causes in items a., b., and d., then any loss or damage arising directly from that fire will, subject to the provisions of this policy, be covered. No coverage is provided for any loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

2. War or any warlike operation. This includes declared and undeclared wars, civil wars, revolutions or any civil unrest.

3. The lawful or unlawful capture, seizure, requisition or detainment of your **insured vessel** by a civil authority or any attempt at any of these.

4. An actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

5. Preparation for or participation in any race, speed, or stunting contest.

6. Willful or intentional misconduct or criminal act on the part of any **insured** or during any illegal activity on the part of any **insured**.

7. No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of sexual molestation, corporal punishment, physical or mental abuse or the transmission of a communicable disease.

## PHYSICAL DAMAGE

1. Coverage
   a. Hull Coverage
      i. Coverage
         We will cover sudden accidental direct physical loss or damage to the **insured vessel**. We will provide coverage for **insured vessel's** equipment removed from it and temporarily stored separately ashore during the term of this policy.

      ii. Under Hull Coverage, we do not cover:
         1) dock boxes, moorings, cradles, lifts or shore stations;
         2) items which are covered elsewhere under this policy; or
         3) fuel.

2. Loss Conditions
   a. Deductibles
      i. We will not pay for loss, damage or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the applicable deductible shown on the Declarations Page or Schedule Page.
      ii. If a Windstorm Deductible is shown on the Declarations Page or Schedule Page, then the Windstorm Deductible will apply to all partial, total or **constructive total losses** caused by or resulting from any **windstorm**.
      iii. In the event of a total loss or **constructive total loss**, when the Hull coverage is Agreed Value, the 'Hull' deductible shown on the Declarations Page or Schedule Page will be waived, unless caused by **windstorm**.

   b. Salvage and Abandonment
      If we make payment under this policy for loss or damage and there is salvage value, we reserve the right to take possession of the remains if we elect. At our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

WALLACE_000020

We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

c.   Payment of Loss
We will pay losses within 30 days after the earliest of the following:
   i.   we reach agreement with you;
   ii.   final judgment is rendered in a court of law;
   iii.   an appraisal award is filed with us; or
   iv.   a proof of loss is accepted by us.

Payment will be made to the **first named insured**. If a 'Loss Payee' is also named on the Declarations Page, any loss will be paid to the **first named insured** and the 'Loss Payee' as interests appear.

d.   Appraisal
If you dispute our evaluation of the amount of the loss, then you must submit a written request for appraisal within one year of the date of loss. You and we will then each appoint and pay for a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of the local court of record will select an umpire who will decide any differences. The expense of the umpire and all other expenses of the appraisal will be shared equally by you and us. An award in writing by any two such persons will determine the amount of your loss. You and we will be bound by that amount.

Appraisal is not available where there is a dispute as to the existence of coverage. Nothing herein will prejudice or in any way impact our right to contest coverage and to bring suit in a court of competent jurisdiction.

e.   Protect and Recover
In the event of a covered loss to the **insured vessel**, you must protect the **insured vessel** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Hull coverage, but not to exceed the applicable **insured vessel** limit for 'Hull' on the Schedule Page. We will not cover any loss incurred due to your failure to protect the **insured vessel**.

## WATERCRAFT LIABILITY

Coverage
We will cover damages for **bodily injury** or **property damage** for which an **insured** becomes legally liable through ownership, maintenance, or use of the **insured vessel** arising from the **declared usage**.

A yacht club, marina or other similar facility is an additional insured for **property damage** and **bodily injury**, for liability arising from the ownership, use and operation of the **insured vessel**, by an **insured**. A yacht club, marina or other similar facility will not be provided a separate defense.

We will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured vessel**, if you are legally obligated to do so. This is not additional insurance, but is included in the limit of 'Watercraft Liability' coverage.

Wreck means the **insured vessel** has been damaged to such an extent as to render the **insured vessel** not navigable and we determine the **insured vessel** to be a total or **constructive total loss**.

What We Pay
We will pay no more than the limit for 'Watercraft Liability' shown on the Declarations Page for all damages or losses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or Schedule Page, or the number of watercraft involved.

**Supplemental Payments**

In addition to the limit of liability shown on the Declarations Page for 'Watercraft Liability', we shall pay on behalf of an **insured**:

1) premium on appeal bonds and other bonds required in any suit we defend, but not for bonds in amounts which exceed the limit of liability for 'Watercraft Liability' shown on the Declarations Page;
2) any post judgment interest which is earned before we make payment, but only to the extent of the proportion of the damages payable under this policy; and
3) loss of earnings of up to $50.00 a day for any **insured's** attendance at court proceedings at our request.

**Exclusions**

We will not pay for:

1) any fine or civil or criminal penalty assessed by any civil or governmental authority;
2) liability assumed under any contract or agreement;
3) **bodily injury** or **property damage** sustained by any **insured**;
4) **property damage** to property or cargo owned by, rented to, used by or in the care of any **insured**;
5) **bodily injury** or **property damage** caused by or resulting from snorkeling, swimming, scuba diving, skin diving, helmet diving or any similar activity, including **bodily injury** which occurs while disembarking, or boarding the **insured vessel** for snorkeling, swimming, scuba diving, skin diving or helmet diving, and any aggravation of any prior injury;
6) **bodily injury** or **property damage** occurring while the **insured vessel** is being used for water-skiing, aquaplaning, or any similar activity in which a person(s) or object(s) are towed, and until such operations have ended and the person(s) or object(s) engaged in such activity have been safely taken aboard the **insured vessel** or landed safely elsewhere;
7) **bodily injury** or **property damage** sustained during any parasail activities;
8) **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:
   a) causing or contributing to the intoxication of any person;
   b) furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
   c) violating any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;
9) **bodily injury** or **property damage** while the **insured vessel** is being transported on land;
10) **bodily injury** or **property damage** resulting from salvage or towing operations except in emergency situations or as required by statute or regulation;
11) any liability covered or excluded under the **OIL POLLUTION LIABILITY** section of this policy;
12) **bodily injury** or **property damage** resulting from intentional or accidental discharge of a firearm, harpoon gun, speargun, bow and arrow, or any similar devices that shoot a projectile.
13) **bodily injury** or **property damage** resulting from the intentional or accidental discharge of an explosive material or explosive device (including any type of fireworks) that could be controlled by any **insured**.
14) **bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by you. This includes, but is not limited to, any employment, unemployment, disability, worker's compensation, non-occupational disability, occupational disease law, Federal Longshoremen's and Harbor Worker's Compensation Act, or any state or federal workers' or workmen's compensation law or occupational disease law or migrant or seasonal workers law;
15) any obligation for which any **insured** or the **insured vessel** may be liable to paid captain or paid crew as defined under the Jones Act or General Maritime Law, including seaman's remedies for negligence, unseaworthiness, or maintenance and cure;
16) punitive or exemplary damages or associated interest; or
17) **property damage** caused directly or indirectly by any maintenance, repair or servicing to the **insured vessel** by any yacht club, marina or other similar facility that is an additional insured.

**Defense**

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claim or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Watercraft Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## OIL POLLUTION LIABILITY

**Coverage**

We will cover:

1) the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of an **oil pollution incident**;
2) the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;
3) the reasonable costs or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;
4) administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;
5) the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

**Oil pollution incident** means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured vessel** in an accident that is specific in place and time within the policy period.

**What We Pay**

We will pay no more than the limit for 'Oil Pollution Liability' shown on the Declarations Page for all damages or expenses resulting from any **occurrence**. This is the most we will pay, regardless of the number of persons covered under this section, claims made, watercraft or premiums shown on the Declarations Page or Schedule Page, or the number of watercraft involved.

**Exclusions**

We will not pay for:

1) liability assumed under any contract or agreement;
2) any fine or penalty assessed by any governmental unit;
3) an **oil pollution incident**, if any **insured** knows, or has reason to know, of the incident and fails to report it as required by law(s);
4) **property damage** sustained by an **insured**;
5) liability for natural resource damage unless legal action commences within one (1) year of the incident;
6) an **oil pollution incident** unless you provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority; or
7) punitive or exemplary damages or associated interest.

**Defense**

We have the right and duty to defend any suit to which this insurance applies. However, we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the **occurrence** equals the limit for 'Oil Pollution Liability' shown on the Declarations Page.

If a suit is brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action; however, we will not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

This Policy is signed at the Home Office of the company by its president and secretary.

**MARKEL AMERICAN INSURANCE COMPANY**
Glen Allen, Virginia

*Richard R. Grinnan*                                        *C. Michael Crowley*
Richard R. Grinnan, Secretary                          F. Michael Crowley, President
**Administrative Office:** P.O. Box 906, Pewaukee, WI 53072-0906, 800-236-2862

WALLACE_000023



# MARKEL AMERICAN INSURANCE COMPANY

---

## RENTAL USAGE ENDORSEMENT

---

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows:

**DEFINITIONS**, is amended by adding the following:

**Insured** means you or your employees.

An **insured** does not include any:
a.  person operating the **insured vessel** under the terms of any rental agreement;
b.  employee using the **insured vessel** for personal use under a rental agreement;
c.  employee operating the **insured vessel** for a renter under a rental agreement; or
d.  person, organization or their agent or employee who operates a marina, shipyard, boat repair facility, yacht club, sales agency, yacht broker, boat service station, salvor, towing service or like service organization.

**Rental** means the **insured vessel** will be rented to a person(s) for pleasure use for a specified period. You will not provide any captain or crew to the renter; however, a renter may hire a captain or crew member that is not an **insured** to assist.

### WARRANTIES & CONDITIONS

**WARRANTIES & CONDITIONS**, 2. Conditions, is amended by adding the following items:

- Any rental contract which has been submitted to and approved by us, shall be executed between you and any person or organization who uses, rents, hires or leases the **insured vessel** with or without an exchange of consideration or payment for use of the **insured vessel**.
- Copies of rental contracts will be held by you for a period of no less than 7 years after the contract was terminated.
- All persons renting the **insured vessel** must be at least 18 years of age and possess a current valid driver's license.
- All permitted operators must meet all required qualifications to operate the **insured vessel** legally.
- An **insured** shall not fuel an **insured vessel** with any person aboard.
- Prior to any **rental**, all operators will be provided:
  i.   instruction covering the operational characteristics of the **insured vessel**;
  ii.  instruction covering boating regulations unique to the area of operation, including but not limited to speed, distance to maintain from other watercraft or swimmers, no wake zones, channel routes, etc.;
  iii. instruction covering any unique characteristics of the body of water including but not limited to tidal flow, depth of water and currents, etc.;
  iv.  appropriate personal flotation devices for each person aboard as required by the Coast Guard or other legal entity with controlling authority; and
  v.   appropriate safety equipment as required by the Coast Guard or other legal entity with controlling authority.

## RENTAL USAGE ENDORSEMENT

### Physical Damage

**PHYSICAL DAMAGE**, 1. Coverage, a. Hull Coverage, i. Coverage is deleted in its entirety and replaced with the following:

i.   Coverage
We will cover sudden accidental direct physical loss or damage to the **insured vessel** from an external cause.  We will provide coverage for **insured vessel's** equipment removed from it and temporarily stored separately ashore during the term of this policy.

### Physical Damage Exclusions

**PHYSICAL DAMAGE**, 1. Coverage a. Hull Coverage is amended by adding the following item:

▪   Exclusions
We will not pay for loss, damage or expense caused by or resulting from:
1) wear and tear, gradual deterioration, inherent vice, insects, marine life, aquatic mammals, vermin, marring, electrolysis, corrosion, rust, dampness of atmosphere, weathering, osmosis, blistering, mold, mildew, wet or dry rot;
2) failure to maintain the **insured vessel** (including its machinery and equipment) in good condition so that the **insured vessel** cannot be damaged by ordinary weather or water conditions or the rigors of normal use;
3) diminution of value;
4) **windstorm** for any canvas.  Canvas as used in this section means any protective cover made of canvas or manmade material designed as an enclosure or to provide protection. It includes any see through material commonly known as eisenglass or similar material attached thereto, and hardware such as zippers, buttons and snaps;
5) mechanical breakdown, electrical failure or engine overheating;
6) by the wrongful conversion, embezzlement or secretion by a mortgagee, vendee, lessee or other person in lawful possession of the **insured vessel** under a mortgage, conditional sale, lease or other contract or agreement whether written or verbal;
7) **manufacturer's defects**, **design defects** or **latent defect**.

### Watercraft Liability Deductible

**WATERCRAFT LIABILITY**, What We Pay, is amended by adding the following:

Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the deductible amount shown on the Declarations Page for 'Watercraft Liability'. The deductible shall apply once to all payments made under this section as a result of any one **occurrence**, regardless of the number of persons or organizations who sustained damages because of that **occurrence**.

The terms of this insurance, including those with respect to our duty to defend any suits seeking damages and your duties following any loss apply irrespective of the application of the deductible amount. We maintain the right at our discretion to pay and resolve any claim within the Watercraft Liability coverage limit. If we exercise our discretion to pay any claim, you are obligated to pay your deductible to us or to the claimant as we direct you.


All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY

## POLICY CHANGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

**Usage ID**          Rental - 1

**Policy Change**      RENTAL LOCATIONS:
**Description**        SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL.
                       36561 BEAR POINT MARINA, 5749 BAY LA LAUNCH AVE. ORANGE BEACH, AL.
                       36561

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY

## POLICY CHANGE ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows

| | |
|---|---|
| **Usage ID** | Rental - 2 |
| **Policy Change Description** | RENTAL LOCATIONS: SANROC CAY MARINA, 27267 PERDIDO BEACH BLVD. ORANGE BEACH, AL 36561 BEAR POINT MARINA, 5749 BAY LA LAUNCH AVE. ORANGE BEACH, AL 36561 |

All other terms, conditions, and limitations of the policy remain unchanged.

MTD5124-0215

Page 1 of 1

WALLACE_000027

 **MARKEL AMERICAN INSURANCE COMPANY**

---

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

---

We are required to send you this notice pursuant to recently revised federal legislation concerning terrorism insurance. We are sending this notice to you because you are the named insured on this policy issued by Markel American Insurance Company.

Please be advised that coverage for certain acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: the term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ 000.00, and does not include any charges for the portion of losses covered by the United States government under the Act.

Initially, we have opted not to include an additional charge for terrorism coverage on all in-force policies that were previously written without a terrorism exclusion. However, once we have a better understanding of the exposure and rating factors associated with terrorism coverage, we may determine what premium is appropriate for terrorism coverage and charge this premium on all new and renewal policies.

WE ARE REQUIRED BY THE TERRORISM RISK INSURANCE EXTENSION ACT, AS AMENDED, TO NOTIFY YOU THAT, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER YOUR POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE YOUR COVERAGE AND TO NOTIFY YOU OF THE AMOUNT OF YOUR PREMIUM THAT IS ATTRIBUTABLE TO SUCH COVERAGE. **YOU DO NOT NEED TO TAKE ANY ACTION.**

 **MARKEL AMERICAN INSURANCE COMPANY**

---

### GENERAL AMENDATORY ENDORSEMENT

In consideration of the premium charge shown on the Declarations Page, it is hereby agreed and understood that the Markel Tradesman policy is amended as follows:

**WATERCRAFT LIABILITY**, Exclusions, item 4) is deleted in its entirety and replaced by the following:

4) **property damage** to property or cargo owned by, rented to, used by or in the care of any **insured**. However, this exclusion will not apply to **property damage** to docks that are rented or leased to the **insured**;

All other terms, conditions, and limitations of the policy remain unchanged.



# MARKEL AMERICAN INSURANCE COMPANY
# MARKEL INSURANCE COMPANY

---

## POLICYHOLDER DISCLOSURE OF FEES

---

Please be advised that policyholders will be subject to the following fees, where applicable.

**Installment Fees**
An Installment Fee will be included on any payment when the policy is paid using an installment plan. The Installment Fee is $2.00 per payment when the policyholder is enrolled in an automatic payment plan. The Installment Fee is $6.00 per payment when the policyholder is not enrolled in an automatic payment plan.

**Reinstatement Fee**
A Reinstatement Fee of $20.00 will apply on any reinstated policy which had previously canceled or lapsed due to non-payment of premium.

UNITED STATES
POSTAL SERVICE

July 31, 2023

Dear Circuit Clerk:

| UJS Information | |
|---|---|
| Case Number: 05-CV-2023-900897.00 | Intended Recipient: |
| Document Type: Complaint | MARKEL AMERICAN INSURANCE COMPANY (D001) |
| Restricted Delivery Requested: No | C/O CORPORATION SERVICE C |
| | 641 SOUTH LAWRENCE STREET |
| | MONTGOMERY, AL 36104 |

The following is in response to your request for proof of delivery on your item with the tracking number:
**9214 8901 7301 4105 2300 0583 68**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered to Agent for Final Delivery |
| **Status Date / Time:** | July 31, 2023, 1:24 pm |
| **Location:** | MONTGOMERY, AL 36104 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Recipient Signature

Signature of Recipient:
(Authorized Agent)

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004



AlaFile E-Notice

05-CV-2023-900897.00

Judge: SCOTT P. TAYLOR

To:  STOCKMAN NORMAN MATT
     nstockman@handfirm.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY
05-CV-2023-900897.00

The following matter was served on 7/31/2023

**D001 MARKEL AMERICAN INSURANCE COMPANY**

**Corresponding To**

CERTIFIED MAIL

ELECTRONIC CERTIFIED MAIL RETURN

BRENDA Q. GANEY
CIRCUIT COURT CLERK
BALDWIN COUNTY, ALABAMA
312 COURTHOUSE SQUARE
SUITE 10
BAY MINETTE, AL, 36507

251-937-0280
brenda.ganey@alacourt.gov



### AlaFile E-Notice

05-CV-2023-900897.00

Judge: SCOTT P. TAYLOR

To:  MARKEL AMERICAN INSURANCE COMPANY (PRO SE)
C/O CORPORATION SERVICE C
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL, 36104-0000

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

B&D MARITIME, INC. V. MARKEL AMERICAN INSURANCE COMPANY
05-CV-2023-900897.00

The following matter was served on 7/31/2023

**D001 MARKEL AMERICAN INSURANCE COMPANY**

**Corresponding To**

CERTIFIED MAIL

ELECTRONIC CERTIFIED MAIL RETURN

BRENDA Q. GANEY
CIRCUIT COURT CLERK
BALDWIN COUNTY, ALABAMA
312 COURTHOUSE SQUARE
SUITE 10
BAY MINETTE, AL, 36507

251-937-0280
brenda.ganey@alacourt.gov

## IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

| | |
|---|---|
| **B&D MARITIME, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case Number: 05-CV-2023-900897** |
| | ) |
| **MARKEL AMERICAN INSURANCE** | ) |
| **COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>NOTICE OF REMOVAL</u>

TO THE PLAINTIFF IN THE ABOVE-STYLED CAUSE AND ITS ATTORNEY OF RECORD:

Please take notice that on the 30th day of August, 2023, the undersigned, as attorneys for Defendant Markel American Insurance Company, filed on its behalf a Notice of Removal in the United States District Court for the Southern District of Alabama, to remove the above-entitled cause of action from the Circuit Court of Baldwin County, Alabama (05-CV-2023-900897) to said United States District Court, and also filed a true copy of said Notice of Removal with the Clerk of the Circuit Court of Baldwin County, Alabama.

Respectfully Submitted,

s/ Seth T. Hunter
Brenen G. Ely (ELY004)
Seth T. Hunter (HUN047)
Lauren A. Wiggins (WIG023)
Counsel for Markel American Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, AL 35243
Telephone: (205) 313-1200
Facsimile (205) 313-1201
bely@elylawllc.com
shunter@elylawllc.com
lwiggins@elylawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and accurate copy of the foregoing has been served on all parties of record via the Alafile electronic filing system and/or by U.S. Mail on this the 30th day of August, 2023.

Norman M. Stockman
Hand Arendall Harrison Sale LLC
Post Office Box 123
Mobile, Alabama 36601
nstockman@handfirm.com

s/ Seth T. Hunter                         
**OF COUNSEL**